Commonwealth *v.* Hunter, Appellant.

24

Argued December 10, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Donald M. Moser*, with him *Peruto, Ryan & Vitullo*, for appellant.

*Francis C. Barbieri, Jr., Mark Sendrow*, and *Steven H. Goldblatt*, Assistant District Attorneys, *Abraham J. Gafni*, Deputy District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, submitted a brief for Commonwealth, appellee.

OPINION BY PRICE, J., April 22, 1976:

At approximately eight p.m. on January 4, 1974, two men robbed the 833 Bar on the corner of Fourth and Diamond Streets in Philadelphia. Willie Daniels, the bartender, was alone in the establishment when the men entered. One of the robbers displayed a gun, and Daniels was quickly ordered to turn around, proceed into the kitchen and face the wall. Daniels, who had been watching television when the men entered, had little opportunity to observe either of them. He was able to state only that both men were black, both had relatively short hair, and the man who pulled the gun wore an expensive-looking, three-quarter length, brown, "tweedy-looking" coat.

After the robbers fled, Daniels found that the cash register had been emptied of its contents, which included three ten dollar bills, one five dollar bill and thirteen one dollar bills, totaling forty-eight dollars. Also missing were two one dollar bills that had been displayed along with the establishment's liquor license. Each of these bills had a name written on it, "Florence" on one and "Big John" on the other.

On the same evening, at approximately eight-thirty p.m., Officers Zimmerman and Theurer of the Philadelphia Police Department were on patrol in their marked police van. At the corner of Susquehanna Avenue and Orianna Street, approximately a block and a half from the 833 Bar, they observed a pale green Plymouth Cricket going through a stop sign. The officers pursued the vehicle and attempted to stop it by flashing their spotlight, putting on their overhead lights and using their siren. The driver of the fleeing vehicle ignored these warnings and continued north on Orianna, driving erratically. At the corner of Orianna and York Streets, the vehicle slowed, the driver's door opened, the driver's seat was pushed forward and a man, later identified as the appellant, leaped from the car. Officer Theurer left the police van and chased the fleeing

individual on foot. Officer Zimmerman continued to pursue the green Plymouth which, after narrowly avoiding two accidents, was finally stopped by a blockade of other police vehicles. The Plymouth was driven by appellant's co-defendant Holmes and the rear seat was occupied by co-defendant Carter. When the driver was unable to produce a license or car registration, he and the passenger were patted down and taken to East Detective Division for investigation as suspects in a possible car theft.

Meanwhile, Officer Theurer pursued the appellant for approximately twelve to fourteen blocks before finally apprehending him. During this chase, the officer observed that appellant was wearing a three-quarter length tan and brown coat and that appellant was attempting to dislodge something from the right pocket of the coat. After appellant was apprehended, the officer patted him down. No weapon was found, but appellant's right pocket contained a wad of bills. Appellant was taken into custody as a possible accomplice in car theft.

While the police were bringing the former occupants of the fleeing vehicle into the station, they received a radio call concerning the robbery at the 833 Bar. After hearing a description of the first suspect, Officer Theurer interrupted the call, stating that he believed they had the males that committed the robbery. At the Detective Headquarters a routine search of the defendants revealed that the appellant possessed a wad of currency in the exact amount and denominations taken in the bar robbery and that his co-defendant, Carter, possessed the two marked one dollar bills.

Appellant's first argument is that his arrest and subsequent search were illegal. We initially note that the instant case is clearly distinguishable from *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973). *Swanger* condemned random "routine" car stops in the absence of any evidence of a Vehicle Code violation. In the instant case, the attention of the police was directed

to the Plymouth by a clear traffic violation committed in their presence. There is no doubt that the police were justified in attempting to stop and eventually stopping the car.

It is settled law that, under the Fourth Amendment, a warrantless arrest is permissible given exigent circumstances and probable cause. The test for probable cause is whether facts were available which would justify a person of reasonable caution in believing that a crime had been committed and that the individual arrested was the probable perpetrator. *McCray v. Illinois*, 386 U.S. 300 (1967); *Commonwealth v. Wilder*, 461 Pa. 597, 337 A.2d 564 (1975). The proposition that "mere flight" is not, of itself, enough to establish probable cause for arrest is also well established. It has been recognized, however, that "[f]light, coupled with other factors, such as knowledge of the defendant's prior criminal record or the sight of contraband or screams for help or reliable information that defendant had attempted to commit or had committed a crime, may be strong indication that there is something that those fleeing wish to hide from the police and may constitute probable cause for arrest...." *Commonwealth v. Jeffries*, 454 Pa. 320, 324, 311 A.2d 914, 917 (1973), *quoting United States v. Margeson*, 259 F. Supp. 256 (E.D. Pa. 1966).

In the present case, the officer who arrested appellant had a number of factors influencing his decision to make a warrantless arrest: (1) The auto in which appellant was traveling first committed a flagrant traffic violation in the presence of police officers and then fled from a clearly marked police vehicle. (2) In the course of its flight, the Plymouth proceeded in a reckless and dangerous manner involving high speeds, failure to stop at two stop signs and at least two red lights. A near-accident resulted at one intersection when the fleeing vehicle failed to stop at a red light, forcing two oncoming autos in the crossing street to drive onto sidewalks to avoid a collision. (3) The appellant leaped from the

moving vehicle and began to flee on foot, disregarding Officer Theurer's order to halt. (4) The appellant continued to flee on foot for twelve to fourteen blocks, with Officer Theurer in pursuit, before finally surrendering. (5) During the chase, Officer Theurer observed appellant reaching into the right pocket of his coat, apparently trying to dislodge something. (6) Upon finally apprehending the appellant, Officer Theurer patted him down[1] and detected a bulge in his right coat pocket. A search of the pocket yielded a wad of bills.

These factors were sufficient to support a reasonable inference that a crime had been committed and that the appellant was involved. Officer Theurer's arrest of the appellant as a suspect in a possible car theft was thus supported by probable cause and proper under the circumstances. After the broadcast concerning the robbery of the bar, which (broadcast) took place shortly after the three men were taken into custody, the police had a more than adequate basis to hold them on a robbery charge.

As his second alleged point of error, the appellant attempts to assert the constitutional claim of one of his co-defendants. Appellant claims that two marked one-dollar bills, taken from the co-defendant Carter and introduced into evidence at the joint trial were the fruits of an illegal arrest and should be excluded. We need not, at this time, decide whether the appellant has standing to make such a claim under *Commonwealth v. Weeden*, 457 Pa. 436, 322 A.2d 343 (1974), because this ground of appeal has not been properly preserved.

In *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975), our supreme court announced that issues not preserved in compliance with Rule 1123 of the Pennsylvania Rules of Criminal Procedure, requiring written

---

1. This pat down of the appellant was clearly justified under *Terry v. Ohio*, 392 U.S. 1 (1968).

post-trial motions, would no longer be considered on appeal.[2]

The court modified this position in *Commonwealth v. Bailey*, 463 Pa. 354, 344 A.2d 869 (1975), holding that waiver of issues on the basis of failure to comply with Rule 1123 would not be found in cases with relevant dates prior to *Blair, supra.* A finding of waiver is particularly inappropriate, the court pointed out, where the trial court considered the merits of claims presented orally.

*Commonwealth v. Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975), provides another important link in the waiver analysis. In *Mitchell,* the appellant had challenged the voluntariness of his confession throughout the lower court proceedings against him. On appeal, however, he sought for the first time to attack the confession as obtained in violation of both Pa.R.Crim.P. 323, limiting pre-arraignment delay, and of the exclusionary doctrine announced in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). Our supreme court, rejecting its earlier reasoning in *Commonwealth v. Wayman*, 454 Pa. 79, 309 A.2d 784 (1973), stated that:

> "To make a distinction turn upon the fact that one is merely advancing a new theory, creates a fiction

---

2. Pa.R.Crim.P. 1123, 19 P.S. Appendix, provides in pertinent part:

"(a) Within seven (7) days after a finding of guilt, the defendant shall have the right to file written motions for a new trial and in arrest of judgment. Only those grounds may be considered which were raised in pre-trial proceedings or at trial, unless the trial judge, upon cause shown, allows otherwise....

. . .

(c) Upon the finding of guilt, the trial judge shall advise the defendant on the record: (1) of his right to file post-verdict motions and of his right to the assistance of counsel in the filing of such motions and on appeal of any issues raised therein; (2) of the time within which he must do so as set forth in paragraph (a); and (3) that *only the grounds contained in such motions may be raised on appeal."* (emphasis added).

which frustrates the very purpose sought to be accomplished by a strict application of waiver." 464 Pa. 117, 126, 346 A.2d 48, 53 (1975).

The court further explained:

" 'It is a fundamental principle of appellate review that we will not reverse a judgment or decree on a theory that was not presented to the trial court. (citations omitted).' " 464 Pa. 117, 126, 346 A.2d 48, 53 (1975), *quoting Kimmel v. Somerset County Commissioners*, 460 Pa. 381, 384, 333 A.2d 777, 779 (1975).

Applying this body of case law to the instant facts, it is apparent that the appellant did not preserve a claim based on the constitutional rights of his co-defendant. An examination of the record reveals the following: (1) At the pre-trial suppression hearing, appellant's counsel explored the circumstances of the arrests of both appellant and his co-defendants. The record does not show, however, that the appellant advanced, on his own behalf, the instant theory in support of suppression. (2) The appellant did not object to the admission, at trial, of the physical evidence allegedly obtained in violation of his co-defendant's constitutional rights. (3) The trial judge, in her supporting opinion, does not deal with or even mention such a claim by the appellant. (4) The appellant, in his written post-trial motions, includes the following:

"4. The defendant was illegally arrested without probable cause. 5. The physical evidence was seized illegally and obtained as the result of the illegal arrest."

A fair reading of these motions is that the appellant disputed the legality of his arrest and the admissibility of the physical evidence obtained as a result. It would be contrary to the clear holding of *Mitchell, supra*, to find that the appellant's post-trial motions preserved any argument based on the rights of his co-defendant.

The final argument made by the appellant is that his

conspiracy conviction should be reversed because his co-defendants have been acquitted or released. The controlling case on this point is *Commonwealth v. Salerno*, 179 Pa. Superior Ct. 13, 116 A.2d 87 (1955), which states: "In a charge for conspiracy the Commonwealth must prove that two or more are guilty. *Com. v. Faulknier*, 89 Pa. Superior Ct. 454, 459. Where, therefore, there are only two conspirators and one is acquitted, the other cannot, of course, be tried or convicted. *Com. v. Avrach*, 110 Pa. Superior Ct. 438, 441, 168 A. 531. The law requires only that there be at least two guilty conspirators, not that there be two convicted conspirators. Where one of the two conspirators is acquitted, then there is a legal determination that one is innocent and thus there cannot be two *guilty* conspirators. Where, however, one is not yet indicted or for some reason cannot be tried, there is no bar to the conviction of the other." 179 Pa. Superior Ct. at 16-17, 116 A.2d at 89.

The conspiracy indictment of appellant Hunter includes the following entry: "CO-CONSPIRATOR — OTHER UNKNOWN PERSONS — Turhan Carter and Cornelius Holmes." The first two terms are part of the indictment form, the last is typed-in. It is apparent from the trial proceedings that neither the police nor the prosecutor suspected or actually alleged participation in the bar robbery-conspiracy by any persons other than the named defendants. After trial, co-defendant Holmes was acquitted because there was insufficient evidence adduced to find him guilty of robbery or criminal conspiracy. Co-defendant Carter was originally convicted of robbery and conspiracy. On post-trial motions, the trial court arrested judgment on the above-mentioned convictions and found Carter guilty as an accessory after the fact. It was subsequently determined that this change in charges could not be legally supported. Carter's case was then remanded to the trial court, which discharged him.

The rationale of *Salerno, supra,* mandates a reversal

of appellant's conspiracy conviction. Both of appellant's alleged co-conspirators have ultimately been acquitted of the conspiracy charge. Consequently, there cannot be two guilty conspirators, as the law requires, and appellant's conviction for conspiracy must fall.

The judgment of sentence at No. 172 February Term, 1974 on the conviction of robbery is affirmed. The judgment of sentence at No. 173 February Term, 1974 on the conviction of criminal conspiracy is reversed and appellant discharged as to this count.