378 A.2d 1219

COMMONWEALTH of Pennsylvania

v.

Ancell Eugene HAMM, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 22, 1976.

Decided Oct. 7, 1977.

488

Fred T. Cadmus, III, Ronald C. Nagle, Westchester, for appellant.

William H. Lamb, Dist. Atty., for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

ROBERTS, Justice.

On November 20, 1972, appellant Ancell Eugene Hamm was arrested and charged with the murder of two police officers. On March 30, 1973, appellant's pre-trial motion for a change of venue from Chester County was granted. A jury trial was held on March 11 to 25, 1974 in Dauphin County. Appellant was convicted of murder of the first degree and received two consecutive sentences of life imprisonment. This appeal followed.[1] We vacate judgment of

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1977).

sentence and remand the case to the trial court for proceedings consistent with this opinion.

## I

Appellant asserts that the Commonwealth's evidence was insufficient to support appellant's conviction.[2] We do not agree.

The Commonwealth's evidence established that at approximately 2:00 a. m. on November 15, 1972, Officers Davis and Posey, two uniformed police officers of the Kennett Square Police Department, were shot to death in front of the Kennett Square police station. During the initial investigation on November 15, the police found a spent shell casing across the street from the police station, approximately sixty yards away. On November 19, 1972, the state police, assisted by about one hundred volunteer firemen, conducted a search of the field on the northern edge of Kennett Square. The search party discovered a .308 caliber rifle at a location between the police station and appellant's home, approximately a sixteen minute walk from the station and a three minute walk from appellant's home. The barrel of the rifle was bent. A sight cover and bolt were also found in the general vicinity of the rifle. On November 21, 1972, the police found a sling in the field. The sling fit the .308 rifle.

Two Commonwealth ballistic experts expressed the opinion that the bullet which struck Officer Davis was fired from the .308 rifle. The bullet fragments recovered from Officer Posey's body were too badly damaged to determine whether they were fired from the .308 rifle, but one expert was able to determine that these fragments were fired from a rifle "having the same class characteristics" as the .308 rifle. The other expert testified that the shell casing found across the street from the police station had been discharged by the bolt found near the .308 rifle. The ballistics experts

**2.** If appellant's assertion were meritorious, he would be entitled to a discharge, while his other claims, if successful, would only entitle him to a new trial. We therefore address his claim that the evidence was insufficient to sustain his conviction.

also testified that the spent shell casing had been "reloaded" several times.[3]

The Commonwealth introduced evidence linking appellant to the murders. On January 23, 1970, almost three years before the killings, the police, pursuant to another investigation, seized four weapons from appellant's home, including the .308 rifle which was used in the sniper attack on Officers Davis and Posey. The four weapons were returned to appellant's mother in May 1972. When the police searched appellant's home and the house trailer of his brother James Hamm, which is located on the same property as appellant's home, they discovered three of the four weapons. The missing weapon was the .308 rifle, later found in the field near appellant's house. Thus, the evidence permitted the jury to conclude that appellant was the owner of the murder weapon. In addition, appellant was a skilled marksman and had been seen practicing with the .308 rifle prior to the killings. Appellant was proficient in reloading his own shells and possessed the necessary equipment for doing so. Approximately one month before the murder, appellant attempted to purchase a human silhouette target from a sporting goods store; such targets are normally sold only to police departments.

The Commonwealth's evidence also suggested a motive for the murder. Officer Davis had filed criminal charges against appellant on several occasions. Appellant believed that Davis was harassing him. The most recent charges arose out of an incident which took place on September 21, 1972, less than one month before the murders. On that date, Davis stopped appellant's car. After appellant refused to display his operator's license and vehicle registration, appellant and Davis became involved in a physical confrontation. Appellant was arrested and taken to the police station where he and Davis continued to argue with each other. At one point, appellant stated, "Davis, I'm not scared of you," and "I'll get even with you." Appellant was

___

3. A spent shell casing may be reloaded by inserting a new bullet, primer and powder into the casing.

charged with resisting arrest and assault and battery. These charges made by Officer Davis were scheduled for grand jury proceedings commencing November 27, 1972.

The Commonwealth introduced the testimony of Frazer Culbreath, who was an inmate at the Chester County Prison Farms while appellant was held there awaiting trial. Culbreath testified that appellant told Culbreath that "he wish[ed] he had never attained the knowledge on firearms and rifles and individual handguns and reloading procedures, and above all he wish[ed] his mother could have been spared the degree of embarrassment she had endured due to his rash, but justifiable actions." Culbreath testified that appellant said he had a good excuse as to why the weapons were found where "I put . . . ." Culbreath said that appellant stopped short and did not complete his sentence after using the expression "I put." Culbreath further testified that appellant told him that he intended to write a "treatise on the art of snipering," after gaining his freedom.

██ The defense introduced a substantial amount of evidence to refute the key elements in the Commonwealth's theory of the case.[4] However, in passing upon the sufficiency of the evidence, this Court considers the evidence in the light most favorable to the Commonwealth. E. g., *Commonwealth v. Brown*, 467 Pa. 388, 357 A.2d 147 (1976); *Commonwealth v. Caye*, 465 Pa. 98, 348 A.2d 136 (1975); *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573, cert. denied, 423

4. According to the defense, appellant was in his home when the police officers were shot. Appellant took the stand and described his activities on the night of the killings. In particular, he testified that from approximately 1:00 a. m. to 3:00 a. m., he was in his home with Shirley Hollaway, a family friend who was visiting. Appellant's testimony was corroborated by other defense witnesses, including Ms. Hollaway. Appellant further testified that he never made statements attributed to him by Frazer Culbreath. The defense also attempted to bolster appellant's alibi by suggesting to the jury that the killings had been committed by Bowman Darrell, a friend of appellant. In 1973, Darrell died in an automobile accident. Appellant testified that in September 1972, he gave the .308 rifle to Darrell who later compensated appellant by giving him an antique rifle. Other defense witnesses testified that Darrell had, on several occasions, threatened Officer Davis because Darrell believed that Davis was attempting to initiate a relationship with Darrell's wife.

U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 (1975). The test of sufficiency of the evidence is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the factfinder could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. E. g., *Commonwealth v. Thomas*, 465 Pa. 442, 350 A.2d 847 (1976); *Commonwealth v. Johnson*, 458 Pa. 23, 326 A.2d 315 (1974).

We conclude that there was sufficient evidence for the jury to find that appellant was guilty of the murder charges against him.

## II

Next, appellant challenges the trial court's refusal to compel the Commonwealth to provide the defense with all prior statements of each Commonwealth witness after the witness testified at trial.

Traditionally, the right of a criminal defendant to discovery of prosecution evidence has been restricted. See, e. g., *Commonwealth v. Caplan,* 411 Pa. 563, 192 A.2d 894 (1963). See generally ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Discovery and Procedure Before Trial § 1.2 and Commentary, at 34–42 (Approved Draft, 1970) [hereinafter ABA Standards]; Annot., 7 A.L.R.3d 8 (1966). In recent years, however, there has been a "growing realization that disclosure rather than suppression of relevant materials ordinarily promotes the proper administration of criminal justice." *Dennis v. United States,* 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966), quoted in *Lewis v. Court of Common Pleas,* 436 Pa. 296, 304 n. 4, 260 A.2d 184, 189 n. 4 (1969); see, e. g., *Commonwealth ex rel. Specter v. Shiomos,* 457 Pa. 104, 110, 320 A.2d 134, 137 (1974); id. 457 Pa. at 110–11, 320 A.2d at 137 (concurring opinion of Pomeroy, J.); id. 457 Pa. at 112, 320 A.2d at 138 (concurring opinion of Nix, J.). See generally ABA Standards §§ 1.1, 1.2, 2.1; Goldstein, The State and the Accused: Balance of Advantage in Criminal Procedure, 69 Yale L.J. 1149 (1960).

Presently, pre-trial discovery in criminal cases is governed by Pa.R.Crim.P. 310,[5] which permits the defense to discover only "written confessions or written statements made by the defendant," unless the defense can establish the existence of "exceptional circumstances." Rule 310 further states: "In no event, however, shall the court order pre-trial discovery or inspection of written statements in the possession of the Commonwealth."

This Court has held that the limitations on discovery imposed by Pa.R.Crim.P. 310 are inapplicable to defense requests at trial for inspection of prior statements of Commonwealth witnesses who have already testified. In *Commonwealth v. Kontos,* 442 Pa. 343, 349, 276 A.2d 830, 832–33 (1971), we stated:

". . . Rule 310 must be strictly interpreted. Cf. *Lewis v. Lebanon County Court of Common Pleas,* 436 Pa. 296, 260 A.2d 184 (1969). . . .

"[T]he traditional rationales for limiting or prohibiting pretrial discovery in criminal cases do not extend to the at-trial situation. Foremost of these rationales has been the fear that more liberalized pretrial discovery would enable the criminal defendant to construct a perjured defense. . . . The traditional opposition to criminal discovery has also expressed a concern that such advance disclosure might in some cases lead to the attempted intimidation or killing of witnesses for the prosecution. . . . Even assuming for the moment that these fears have any substantial basis whatsoever, a view which is open to much doubt, it is clear that they have no place in the context of the disclosure at trial of the prior statements of Commonwealth witnesses. Once the Commonwealth's witnesses have appeared at trial, their personal safety and freedom from potential intimidation are in no way enhanced by denying to the defendant access to their pretrial statements. Nor would granting of such access to

5. This Court recently adopted a new rule expanding pre-trial discovery in criminal cases. Pa.R.Crim.P. 305 (adopted June 29, 1977, effective January 1, 1978).

the defendant heighten his opportunity for successful perjury."

Thus, in Pennsylvania, a defendant is entitled, upon request at trial, to examine prior statements of Commonwealth witnesses which the Commonwealth has in its possession. *Commonwealth v. Grayson,* 466 Pa. 427, 353 A.2d 428 (1976); *Commonwealth v. Johnson,* 457 Pa. 554, 327 A.2d 632 (1974) (dictum); *Commonwealth v. Morris,* 444 Pa. 364, 281 A.2d 851 (1971); *Commonwealth v. Kontos,* supra. Examination of these statements provides the defense "a fair opportunity to cross-examine the witnesses." [6] *Commonwealth v. Grayson,* 466 Pa. at 429, 353 A.2d at 429; accord, *Jencks v. United States,* 353 U.S. 657, 667, 77 S.Ct. 1007, 1012–13, 1 L.Ed.2d 1103, 1111 (1957).

In this case, after each Commonwealth witness testified at trial, appellant requested that the Commonwealth furnish to the defense all prior statements made by the witness which the Commonwealth had in its possession. During the course of the trial, the Commonwealth provided the defense with the prior statements for all but two of its witnesses. With respect to these witnesses, Ellen Roten and James Hamm, the Commonwealth asserted that it had no duty to produce the prior statements because the statements did not relate to matters raised on direct examination.[7] For each of these

**6.** Although the purpose of the rule is usually stated in terms of aiding defense cross-examination of Commonwealth witnesses, it may have broader purposes as well. After examining a prior statement of a Commonwealth witness a defendant may be able to use the information obtained in the presentation of his defense, not just in the cross-examination of the witness who made the statement. This is not an undesirable concomitant of the rule permitting defense access to prior statements of Commonwealth witnesses. Indeed, the rule may also be founded on the principle that once the Commonwealth calls a witness, the defense should be entitled, as a matter of fairness, to learn what the witness knows about the case, whether or not the information has been elicited during direct examination. See note 10, infra.

**7.** Ms. Roten testified on direct examination that she observed appellant shooting a rifle in the summer preceding the murder of the two police officers. This corroborated the testimony of another Commonwealth witness. Ms. Roten, however, was unable to state what kind of rifle appellant was using. Ms. Roten also testified that when

witnesses, the trial court ordered the Commonwealth to submit the witness' statements to the court for its inspection. After examining the statements, the court concluded that the statements had no relation to the matters covered in the witness' direct testimony and denied appellant access to the statements.

The trial court based its ruling on the Superior Court's decision in *Commonwealth v. Swierczewski,* 215 Pa.Super. 130, 257 A.2d 336 (1969). In *Swierczewski,* the Superior Court stated:

"[D]efense access [to prior statements of Commonwealth witnesses] is subject to the control of the trial court, which must review the requested documents and may permit access only to those portions relevant to matters raised in direct examination."

215 Pa.Super. at 134–35, 257 A.2d at 339 (dictum); accord, *Commonwealth v. Kubacki,* 208 Pa.Super. 523, 224 A.2d 80 (1966). Appellant asserts that a defendant's right to examine at trial the prior statements of Commonwealth witnesses "should encompass the full and complete statement of the witness." [8]

she visited appellant in prison after his arrest, appellant told her "not to say anything, to forget" about the day she saw him shooting a rifle.

James Hamm, appellant's brother, testified that appellant gave him a 7 millimeter rifle in late August or early September 1972. He then resisted the Commonwealth's efforts to elicit testimony that he saw appellant take a scope off the 7 millimeter rifle.

8. In *Swierczewski,* the defense requested access to the prior statements of Commonwealth witnesses which related to matters raised on direct examination. The trial court accepted the Commonwealth's representation that access would result in disclosure of confidential information and denied the defense request. The Superior Court held that the trial court erred in denying the defense request without first examining the prior statements in camera. Thus, the Superior Court's statement of its holding, limiting the defense to examination of those prior statements determined by a trial court to be related to the direct examination, was overbroad and unnecessary to the decision of the case. Defense counsel only requested material which related to the direct examination; the issue whether the defense is entitled to other statements was not before the court. In addition, the case was complicated by the Commonwealth's claim of confidentiality. When a claim of confidentiality is made, in camera

498

■   Heretofore, this Court has not reviewed the propriety of the procedure set forth in *Swierczewski* for administering a defendant's right to examine prior statements of Commonwealth witnesses.  We conclude that in camera review of the prior statements of Commonwealth witnesses by the trial court does not adequately protect the interests served by permitting the defense access to prior statements of Commonwealth witnesses.

The primary purpose of granting the defense access to prior statements of Commonwealth witnesses is to enable the defense to effectively cross-examine the witnesses.  The basic flaw in the *Swierczewski* procedure is that it presupposes that a judge is in a position to make a reliable determination as to what material will aid the defense in cross-examination without the benefit of defense counsel's "well-informed advocacy." [9]   However, "[i]n our adversary system it is enough for judges to judge.  The determination of what may be useful to the defense can properly and effectively be made only by an advocate."  *Dennis v. United States,* 384 U.S. 855, 875, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973

review by the trial court may be appropriate.  See generally ABA Project On Minimum Standards For Criminal Justice, Standards Relating to Discovery and Procedure Before Trial § 4.6 (Approved Draft, 1970).  Yet, the Superior Court did not so frame its holding.  Instead, the court stated that the trial court should determine whether the prior statements relate to the direct testimony.

In *Kubacki,* like *Swierczewski,* the trial court denied a defense request to examine the prior statement of a Commonwealth witness without first inspecting the statement in camera.  After Kubacki was found guilty, the trial court examined the statement and found that it did not relate to the case.  The Superior Court granted Kubacki a new trial, concluding that the prior statement did relate to the direct testimony.  Since the Superior Court determined that the prior statement related to the direct testimony, it was unnecessary to decide whether the defense is entitled to examine a prior statement which the trial court concludes does not relate to the Commonwealth witness' direct testimony.  The Superior Court also stated that the trial court should have examined the prior statement before the witness was cross-examined by the defense.  Since the trial court failed to do so, the issue whether in camera review adequately protects a defendant's rights was not squarely presented.

**9.**  *Alderman v. United States,* 394 U.S. 165, 184, 89 S.Ct. 961, 972, 22 L.Ed.2d 176, 193 (1969).

(1966) (footnote omitted); accord, *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Jencks v. United States,* supra.

■ We believe that defense counsel can better evaluate whether the prior statements relate to the subject matter of a witness' direct testimony. Statements which on their face do not appear to bear upon the direct testimony may actually be relevant once defense counsel brings to the court's attention other information counsel has developed through his investigation and preparation of the defense. We recognize that the trial court has the ultimate responsibility to determine whether the prior statements may be used in cross-examining the witness or are otherwise admissible. However, like other evidentiary rulings, these determinations are properly made in an adversary context. We do not believe that the trial court can determine the value that prior statements may have to the defense without hearing defense argument after inspection. See *Jencks v. United States,* 353 U.S. at 669 & n. 14, 77 S.Ct. at 1013–14 & n. 14.[10]

**10.** In *Jencks,* the United States Supreme Court held that the trial court erred when it denied a defense motion for the production of prior statements of government witnesses on the ground that "a preliminary foundation [was not laid] of inconsistency between" the witness' prior statements and the direct testimony. The Court held that the government must produce all prior statements which relate to the matters about which the witness testified on direct examination:

> "[R]elevancy and materiality for the purposes of production and inspection, with a view to use on cross-examination, are established when the [prior statements] are shown to relate to the testimony of the witness. Only after inspection of the [prior statements] by the accused must the trial judge determine admissibility."

353 U.S. at 669, 77 S.Ct. at 1014.

While the Court in *Jencks* did not clearly set forth how the relation of a prior statement to the direct testimony is to be "shown," the rationale of the decision suggests that an adversary procedure should be employed. The heart of the *Jencks* decision was concisely summarized when the Court stated that "only the defense is adequately equipped to determine the effective use [of prior statements for the] purpose of discrediting the Government's witness." Id. at 668–69, 77 S.Ct. at 1013.

Moreover, the Court suggests another rationale for its decision:

As the United States Supreme Court observed in *Alderman v. United States,* 394 U.S. at 182, 89 S.Ct. at 971:

> "An apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event . . may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances. . . [T]he task is too complex, and the margin for error too great, to rely wholly on the in camera judgment of the trial court . . .."

■■ An equally important defect in the *Swierczewski* procedure is that a prior statement of a Commonwealth witness which does not relate to the direct testimony may still enable the defense to effectively cross-examine the witness. A witness may be impeached by cross-examination tending to show the witness' bias, dishonest character, or defects in the witness' capacity to observe, remember or recount the matters about which he has testified.[11] See generally 2 G. Henry, Pennsylvania Evidence § 815 (1953); 4 B. Jones, Evidence §§ 26:1 et seq. (6th ed. 1972); J. McCormick, Evidence §§ 33 et seq. (2d ed. 1972); 2 Wharton's Criminal Evidence §§ 430 et seq. (13th ed. 1972). These "lines of attack"[12] have the potential of completely discrediting a Commonwealth witness, yet may not relate to mat-

"We hold, *further,* that the petitioner is entitled to inspect the [prior statements] to decide whether to use them *in his defense.*" Id. at 668, 77 S.Ct. at 1013 (emphasis added). This passage suggests that once a prosecution witness has testified, a defendant should have the opportunity to decide whether the prior statements of the witness may aid the defense in any way, not merely whether the statements may aid in cross-examination of that particular witness.

Although *Jencks* was not decided as a matter of federal constitutional law and is not binding on this Court, we find the Supreme Court's reasoning persuasive and supportive of our holding today.

11. A witness may also be impeached with proof that on a previous occasion he made a statement inconsistent with his present testimony as well as by the testimony of other witnesses whose version of the facts differs from that of the witness being impeached. J. McCormick, Evidence § 33 (2d ed. 1972).

12. Id.

ters about which a witness has testified on direct examination.

Thus, prior statements may, by themselves or in conjunction with other information known by the defense, open up valuable lines of cross-examination for the defense, even though the statements involve matters not directly relating to a witness' direct testimony. Accordingly, a standard which would permit the defense to examine only those prior statements in the possession of the Commonwealth which relate to a witness' direct testimony does not truly grant the defense access to all the prior statements which might properly be employed in cross-examination. Again, only the defense can determine whether the statements are helpful; trial court review of the statements is inadequate. As this Court stated in *Commonwealth v. Grayson,* 466 Pa. at 429, 353 A.2d at 429:

> "Whether the statements of the prosecution's witnesses would have been helpful to the defense is not a question to be determined by the prosecution or by the trial court. They would not be reading the statements with the eyes of a trial advocate engaged in defending a client. Matters contained in a witness's statement may appear innocuous to some, but have great significance to counsel viewing the statements from the perspective of an advocate for the accused about to cross-examine a witness."

We hold that upon request at trial, the defense is entitled to examine in their entirety the prior statements of Commonwealth witnesses which the Commonwealth has in its possession. We recognize that there may be situations in which defense access to prior statements should be restricted by the trial court, but the availability of protective orders should be adequate in such situations. Upon a showing of good cause by the Commonwealth, the trial court may issue a protective order limiting the defense right to examine the statements of Commonwealth witnesses. See generally *Commonwealth v. Kontos,* 442 Pa. at 350 n. 6, 276 A.2d at 833 n. 6; *Lewis v. Court of Common Pleas,* supra; ABA Standards §§ 2.5(b), 2.6, 4.4.

In the instant case, this Court has no way of evaluating whether the trial court's denial of appellant's request to examine the prior statements of Ellen Roten and James Hamm prejudiced his defense. The trial court did not seal the statements and make them part of the appellate record. Nor do we have the benefit of the argument of counsel on the issue of prejudice. We therefore remand the case to the trial court for a determination whether the Commonwealth's failure to produce the prior statements was harmless error. Upon remand, the court should make the statements available to appellant's counsel, and, if appropriate, take evidence and make findings of fact. If the Commonwealth fails to establish beyond a reasonable doubt that the error was harmless, the court should grant appellant a new trial. See *Commonwealth v. Davis,* 455 Pa. 466, 317 A.2d 218 (1974). If the court concludes that the error was harmless it should reinstate the judgment of sentence. Following the court's ruling, a new appeal may be taken to this Court.[13]

Judgment of sentence is vacated and the case remanded to the trial court for proceedings consistent with this opinion.

JONES, former C. J., did not participate in the decision of this case.

MANDERINO, J., joins in this Opinion of the Court and joins in the concurring opinion of NIX, J.

NIX, J., filed a concurring opinion in which MANDERINO, J., joins.

EAGEN, C. J., concurs in the result.

NIX, Justice, concurring.

In my judgment, the trial court erred in refusing to permit appellant to examine at trial the complete prior statements of the witnesses called on behalf of the Common-

---

**13.** Because of our disposition of this appeal, we do not address the fifteen other alleged errors raised by appellant. These claims may be raised again if an appeal is taken from the trial court's ruling on remand.

wealth. The court, in attempting to exclude irrelevant material that may have been contained in these documents, conducted its own review of the statements and made a unilateral determination of relevancy. This procedure was not in accordance with the views expressed in our recent opinion of *Commonwealth v. Grayson,* 466 Pa. 427, 353 A.2d 428 (1976).[1]

While I recognize the problems referred to by the Superior Court in *Commonwealth v. Swierczewski,* 215 Pa.Super. 130, 134–135, 257 A.2d 336, 338–339 (1969), I do not believe that these considerations justify excluding defense counsel from participation in the decision as to what is relevant for purposes of his cross-examination. Admittedly, irrelevant and immaterial testimony should not be introduced at the trial; however, this problem can be met by a direction of the court, after that court has had the benefit of counsel's arguments as to the matters he believes are relevant for this purpose.[2] To implicitly assume that defense counsel, a member of the bar and an officer of the court, would deliberately ignore a court order that certain materials not be disclosed, unjustly impugns the integrity of the defense bar of this Commonwealth.

I concur in the majority's mandate.

MANDERINO, J., joins in this concurring opinion.

1. The defense was entitled to examine the statement of the witnesses in order to have a fair opportunity to cross-examine the witnesses. Whether the statements of the prosecution's witnesses would have been helpful to the defense is not a question to be determined by the prosecution or by the trial court. They would not be reading the statements with the eyes of a trial advocate engaged in defending a client. Matters contained in a witness's statement may appear innocuous to some, but have great significance to counsel viewing the statements from the perspective of an advocate for the accused about to cross-examine a witness. *Commonwealth v. Grayson,* 466 Pa. 427, 428, 353 A.2d 428, 429 (1976).

2. Since there has been no assertion by the prosecution in this case that any of the statements contained undisclosed, vital information pertaining to unrelated prosecution, that question need not be considered here.