390 A.2d 761

COMMONWEALTH of Pennsylvania

v.

**Arthur CAMPBELL, Appellant.**

Superior Court of Pennsylvania.

Argued April 18, 1978.

Decided July 12, 1978.

John R. Cook and Lester G. Nauhaus, Assistant Public Defenders, Pittsburgh, for appellant.

Charles W. Johns and Robert L. Eberhardt, Assistant District Attorneys, Pittsburgh, for Com., appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PRICE, Judge:

Following a jury trial on May 25, 1977, appellant was convicted of burglary[1] and criminal conspiracy.[2]  Post-trial motions were denied and appellant was sentenced to concurrent terms of three and a half to seven years imprisonment. Appellant first contends that the lower court erred in denying his motion to dismiss the conspiracy indictment and in failing to grant his demurrer to that charge.  Finding merit in this claim, we will reverse the conspiracy conviction and discharge appellant on that count.

Appellant and one Ronald Cummings were both charged with burglary and conspiracy in connection with the October 31, 1976, entry of a residence at 4335 Mt. Royal Drive in Pittsburgh.  The conspiracy indictment against appellant named only Ronald Cummings as appellant's coconspirator, and Cummings was acquitted of both burglary and conspiracy in a proceeding prior to appellant's trial.  In the lower court, appellant relied on the principle expressed by this court in *Commonwealth v. Hunter*, 240 Pa.Super. 23, 360

1.   18 Pa.C.S. § 3502.

2.   18 Pa.C.S. § 903.

A.2d 702 (1976), *quoting Commonwealth v. Salerno,* 179
Pa.Super. 13, 16–17, 116 A.2d 87, 89 (1955).

> " 'In a charge for conspiracy the Commonwealth must
> prove that two or more are guilty. *Com. v. Faulknier,* 89
> Pa.Super. 454, 459. Where, therefore, there are only two
> conspirators and one is acquitted, the other cannot, of
> course, be tried or convicted. *Com. v. Avrach,* 110 Pa.Su-
> per. 438, 441, 168 A. 531. The law requires only that there
> be at least two guilty conspirators, not that there be two
> convicted conspirators. Where one of the two conspira-
> tors is acquitted, then there is a legal determination that
> one is innocent and thus there cannot be two *guilty*
> conspirators. Where, however, one is not yet indicted or
> for some reason cannot be tried, there is no bar to the
> conviction to the other.' " 240 Pa.Super. at 32, 360 A.2d at
> 706.

The Commonwealth, on the other hand, maintains that
*Hunter,* apparently the first case dealing with this issue
under the Crimes Code,[3] was incorrectly decided. The con-
spiracy section of the Crimes Code, 18 Pa.C.S. § 903, is based
on § 5.03 of the American Law Institute's Model Penal Code
(MPC). The Commonwealth's argument is premised on cer-
tain language in the comments to the MPC.

> "The definition of the Draft [§ 5.03 Criminal Conspiracy
> became § 903 of Pennsylvania Crimes Code] departs from
> the traditional view of conspiracy as an entirely bilateral
> or multilateral relationship, the view inherent in the stan-
> dard formulation cast in terms of 'two or more persons'
> agreeing or combining to commit a crime. Attention is
> directed instead to each individual's culpability by framing
> the definition in terms of the conduct which suffices to
> establish the liability of any given actor, rather than the
> conduct of a group of which he is charged to be a part—an
> approach which in this comment we have designated 'uni-
> lateral'.
>
> One consequence of this approach is to make it immate-
> rial to the guilt of a conspirator whose culpability has

3. 18 Pa.C.S. § 101 *et seq.,* eff. June 6, 1973.

been established that the person or all of the persons with whom he conspired have not been or cannot be convicted. Present law frequently holds otherwise, reasoning from the definition of conspiracy as an agreement between two or more persons that there must be at least two guilty conspirators or none.   .   .   .

.   .   .   . Under the Draft the failure to prosecute the only co-conspirator or an inconsistent disposition or inconsistent verdict in a different trial would not affect a defendant's liability.   This result accords with the position taken in Section 2.06(6) of the complicity draft [See Comment to § 2.06(6) T.D. No. 1, pp. 38–39]; it recognizes that inequalities in the administration of the law are, to some extent, inevitable, that they may reflect unavoidable differences in proof, [footnote omitted] and that, in any event, they are a lesser evil than granting immunity to one criminal because justice may have miscarried in dealing with another."   Model Penal Code, Comments § 5.03 (Tent. Draft No. 10, 1960) 104–06.

While recognizing that the comments to the MPC have not been adopted by the legislature and are hence not binding, the Commonwealth urges that when they are considered in conjunction with *Commonwealth v. Brown*, 473 Pa. 458, 375 A.2d 331 (1977), they compel the affirmance of the conspiracy conviction herein.   The appellant in *Brown* was charged with murder and voluntary manslaughter in one indictment and conspiracy to commit murder in a second indictment. One of the appellant's co-defendants, a William Long, was alleged to have fired the shots which killed the victim. Long who was tried before the appellant was granted a demurrer on the conspiracy charge and acquitted of murder. Based on this result, Brown's motion to quash the indictments against him on the ground of collateral estoppel was granted.   The supreme court, relying on 18 Pa.C.S. § 306(g), reversed and reinstated the indictments.   That subpart of the accomplice liability section provides:

"An accomplice may be convicted on proof of the commission of the offense and of his complicity therein,

though the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree or offense or has an immunity to prosecution or conviction or has been acquitted."

Noting that the above-quoted provision is patterned on section 2.06(7) of the MPC, the court set forth language from the comment to that section as support for its holding.

" 'This paragraph follows that modern legislation that deprives the distinction between principals and accessories of its common law procedural significance. This change does not, of course, dispense with the necessity of proving the commission of the crime as an element of liability of the accomplice. The change does open up the possibility that an accomplice may be prosecuted though the person charged with the commission of the crime has been acquitted, a possibility that does not obtain in states that dispense only with requiring the previous conviction of the principal. While inconsistent verdicts of this kind present a difficulty, they are intrinsic to the jury system and appear to be a lesser evil than granting immunity to the accomplice because justice has miscarried in the charge against the person who committed the offense.' [Footnotes omitted.]

Model Penal Code, Comments § 2.04(6) (Tent. Draft No. 1, 1953) p. 38. (Footnote omitted)."

*Commonwealth v. Brown, supra,* 473 Pa. at 462, 375 A.2d at 333–34.

In the instant case the Commonwealth reasons that the supreme court's reliance on the comment interpretation of 18 Pa.C.S. § 306(g)'s MPC counterpart is indicative of a general acceptance of the philosophy expressed therein. If the legislature intended to change the law of accomplice liability to a "unilateral" focus, it is argued, it also intended to follow the MPC commentary on conspiracy by effecting a similar change in the legal principles governing that crime. For several reasons, we are not persuaded to the Commonwealth's position.

First, it is clear that the holding in *Brown* does not control the facts of this case. *Brown* is based on section 306(g) of the Crimes Code and the court's refusal to abrogate the requirement of mutuality in the application of collateral estoppel principles to criminal cases. It was held that collateral estoppel claims such as those advanced by Brown could only be asserted by one who was a party to the prior adjudication. The *Brown* decision had no effect on the reasoning in *Commonwealth v. Hunter, supra,* however, because Brown had been indicted for conspiring with two other named persons in addition to William Long, who was acquitted prior to Brown's filing of his motions to quash. Because there were other persons with whom Brown could be convicted of conspiring, the holding in *Hunter* was clearly not applicable. Second, in *Brown* the supreme court premised its analysis on a specific provision of the accomplice liability statute, 18 Pa.C.S. § 306(g). That section explicitly dictates the result in *Brown.* The MPC commentary quoted by the court merely indicates the underlying philosophy of the drafters. In the instant case, however, there is nothing in the conspiracy section of the Crimes Code, 18 Pa.C.S. § 903, that either supports the Commonwealth's position or indicates any change in the prior law on this point. Had such an alteration been intended by the legislature that body could have included a specific provision, analogous to 18 Pa.C.S. § 306(g), in the conspiracy statute to effect it.

■■ Penal provisions are to be strictly construed. 1 Pa.C.S. § 1928(b)(1); *Commonwealth v. Horton,* 465 Pa. 213, 348 A.2d 728 (1975). We will not presume a change in a well-established principle of our law merely on the basis of Model Penal Code commentary, the import of which is in no way reflected in the statute as adopted. Appellant's conviction of conspiracy thus cannot stand.

■ The second issue presented in this appeal is a challenge to the sufficiency of the evidence to convict appellant for burglary. The Commonwealth's proof was as follows. Around 4 p. m. on October 31, 1976, pursuant to an infor-

mant's tip, Detective David Fuchs and five other police officers set up a surveillance of the McCaffrey residence at 4335 Mt. Royal Boulevard in Pittsburgh. At approximately 8 p. m., sounds of forced entry were heard but could not be immediately localized. Detective Fuchs, who was stationed in the house at the top of the cellar steps, stated that after he heard the noise the cellar door opened and two individuals emerged. After the men advanced a few steps, Detective Fuchs leaned forward into view, holding a shotgun, and yelled "Freeze". Both individuals hesitated momentarily and then ran back down the steps. Fuchs observed the first man for approximately 10 seconds and the second for half that period in a hall brightly lit by a chandelier. Although the burglars ultimately escaped, the following day the police received a tip regarding their names. The pictures of the two named men, Ronald Cummings and appellant, were placed in a photo array by Detective Boyle. Detective Fuchs positively identified the pictures as appellant and Cummings. At trial, Detective Fuchs again identified appellant as the second man who had appeared through the doorway in the burglarized residence. Detective Boyle testified that on the night of the surveillance a black Ford Mustang was parked near the front of the McCaffrey home. When appellant was arrested, a black Mustang with the same license number was parked in front of his residence. Asked if he was the owner of the car, appellant answered affirmatively.

The Commonwealth's case rested principally on the identification testimony of Detective Fuchs. Appellant contends that confusion and contradiction as to the descriptions of the two intruders in conjunction with the witness' limited opportunity for observation rendered his testimony unreliable and insufficient to establish guilt. Even without reviewing appellant's rendition of the testimony, however, it is clear that such matters go only to the weight to be accorded the evidence. *Commonwealth v. Shoatz*, 469 Pa. 545, 366 A.2d 1216 (1976); *Commonwealth v. Wiggins*, 239 Pa.Super. 256, 361 A.2d 750 (1976). Although Detective Fuchs may have

confused descriptive details between Cummings and appellant, he never failed to identify appellant and his identification always remained certain.

"Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution—indeed the cases say that 'his [positive] testimony as to identity may be treated as the statement of a fact.' [Citations omitted]."

*Commonwealth v. Kloiber*, 378 Pa. 412, 424, 106 A.2d 820, 826 (1954).

"The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt. *Commonwealth v. Robson*, 461 Pa. 615, 625, 337 A.2d 573, 578 (1975); *Commonwealth v. Boyd*, 461 Pa. 17, 24, 334 A.2d 610, 613 (1975); *Commonwealth v. Murray*, 460 Pa. 605, 608, 334 A.2d 255, 257 (1975). Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. *Commonwealth v. Robson, supra; Commonwealth v. Murray, supra; Commonwealth v. Smith*, 457 Pa. 638, 326 A.2d 60, 61 (1974); *Commonwealth v. Paquette*, 451 Pa. 250, 257, 301 A.2d 837, 841 (1973). The fact-finder is free to believe all, part, or none of the evidence. *Commonwealth v. Robson, supra; Commonwealth v. Smith, supra." Commonwealth v. Mulgrew*, 475 Pa. 271, 278, 380 A.2d 349, 352–53 (1977), *quoting Commonwealth v. Rose*, 463 Pa. 264, 267–68, 344 A.2d 824, 825–26 (1975). The evidence in the instant case, reviewed by this standard, was sufficient.

The judgment of sentence on appellant's conviction of burglary is affirmed. The judgment of sentence on the conspiracy conviction is reversed and appellant is discharged as to that count.