402 A.2d 546

**COMMONWEALTH of Pennsylvania**

v.

**Alfred ANDERSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1978.

Decided April 27, 1979.

496

Gilbert E. Toll, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, HESTER and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the evidence adduced at trial was insufficient to prove him guilty of violating the Controlled Substance, Drug, Device, and Cosmetic Act (the "Drug Act")[1] and criminal conspiracy.[2] Specifically, appellant contends that (1) the testimony of the arresting officer who bought heroin from him was insufficient to establish his identity and (2) there was no evidence showing that appellant conspired with his wife to sell the heroin. We find the evidence insufficient to convict appellant of conspiracy and, accordingly, vacate and remand for resentencing.

On May 31, 1977, Philadelphia police arrested appellant on charges that he sold heroin on May 12, 1977 and conspired with Rochelle Mears to achieve the sale. On August 16, 1977, after a nonjury trial, in which appellant was the only

1. Act of April 24, 1972, P.L. 233, No. 64, § 1; 35 P.S. § 780–101.

2. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S.A. § 903.

defendant,[3] the lower court found him guilty of both charges. After denying timely filed written post-verdict motions the lower court sentenced appellant to "time in" to 23 months imprisonment on the Drug Act charge and one year of consecutive probation on the conspiracy charge. This direct appeal followed.

"In appraising the sufficiency of evidence, we must apply a two-step test. First we must regard the evidence in the light most favorable to the Commonwealth, accepting as true all evidence upon which the fact finder could properly have based its verdict; then we must ask whether that evidence, with all reasonable inferences from it, was sufficient to prove guilt beyond a reasonable doubt." *Commonwealth v. Eddington,* 255 Pa.Super. 25, 386 A.2d 117, 117–18 (1978). *See Commonwealth v. Hamm,* 474 Pa. 487, 378 A.2d 1219 (1977); *Commonwealth v. Roux,* 465 Pa. 482, 350 A.2d 867 (1976). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977).

Regarded in the light most favorable to the Commonwealth, the evidence presented at appellant's trial may be summarized as follows:

At approximately 8:45 p. m. on May 12, 1977, "as a result of information received," Officer Bongard went to 2709 54th Drive in Philadelphia. A man whom Bongard unequivocally identified as appellant approached Bongard and asked what he wanted. Bongard said he was looking for "Walt or Frazier." Appellant identified himself as Frazier. Bongard told appellant that he wished to buy some heroin. Appellant agreed to sell Bongard 11 bags of heroin for $50. At appellant's request, Bongard accompanied him to 2711 54th Drive, where a woman, later identified as appellant's common-law wife, Rochelle Mears, was sitting on the steps.

**3.** Appellant's common law wife and sole alleged co-conspirator, Rochelle Mears, was tried separately on January 26, 1978, and acquitted of identical charges. *See* note 7 *infra.*

Appellant and Mears lived in one of the several apartments at 2711 54th Drive. While in his wife's presence, appellant directed Bongard to give the money to her. Bongard handed Mears $50 in pre-recorded bills, and remained outside with her while appellant went inside the building and returned with 11 glazed paper packets. While still in his wife's presence, appellant handed the packets to Bongard and told him to see him again anytime.[4] Throughout the transaction, at both 2709 and 2711 54th Drive, Bongard observed appellant in good lighting. The parties stipulated that the packets contained heroin. The money was never recovered.

 Appellant first contends that the Commonwealth did not prove his identity beyond a reasonable doubt. "Proof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction." *Commonwealth v. Hickman,* 453 Pa. 427, 430, 309 A.2d 564, 566 (1973). Where a witness' opportunity to identify the accused is good and his identification remains positive and unshaken even after cross-examination, his testimony is clearly sufficient proof of identity. *Id. Accord, Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 (1954). Applying these principles to the instant case, Officer Bongard's positive and unequivocal identification of appellant as the man who sold him heroin is sufficient to prove appellant's identity as the person who committed the crime. Accordingly, we hold that the evidence was sufficient to prove appellant guilty of selling heroin and thereby violating the Drug Act.

 Appellant next contends that the evidence was insufficient to convict him of conspiring with his wife to violate the Drug Act. Section 903(a) of the Crimes Code defines the crime of conspiracy as follows:

"A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

4. *See* note 6 *infra.*

"(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

"(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime."

The essence of criminal conspiracy is "a common understanding, no matter how it comes into being, that a particular criminal objective be accomplished." *Commonwealth v. Henderson,* 249 Pa.Super. 472, 483, 378 A.2d 393, 398 (1977). *Commonwealth v. Wilson,* 449 Pa. 235, 296 A.2d 719 (1972); *Commonwealth v. Neff,* 407 Pa. 1, 179 A.2d 630 (1962). The intent required for criminal conspiracy is the same as that required for accomplice liability: "intent of promoting or facilitating the commission of the offense." *See Commonwealth v. Gardner,* 246 Pa.Super. 582, 371 A.2d 986 (1977). Additionally, Section 903 of our Crimes Code embodies the traditional view that the Commonwealth must prove the *guilt* of at least *two* conspirators in order to *convict* one. *Commonwealth v. Campbell,* 257 Pa.Super. 160, 390 A.2d 761 (1978).

"A conspiracy may be inferentially established by showing the relation, conduct or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed: [cite omitted]." *Commonwealth v. Horvath,* 187 Pa.Super. 206, 211, 144 A.2d 489, 492 (1958). *Commonwealth v. Holmes,* 482 Pa. 97, 393 A.2d 397 (1978); *Commonwealth v. Roux, supra; Commonwealth v. Cooper,* 240 Pa.Super. 477, 362 A.2d 1041 (1976). However, such evidence must be of a volume and quality as to overcome the presumption of innocence and satisfy the fact finder beyond a reasonable doubt; conviction for conspiracy cannot be based upon mere suspicions and conjectures. *Commonwealth v. DiEmidio,* 410 Pa. 172, 176, 188 A.2d 750, 752 (1963). Among the circumstances relevant, but not sufficient by themselves, to prove a corrupt confed-

eration are (1) association between alleged conspirators, *Commonwealth v. Perdie*, 249 Pa.Super. 406, 378 A.2d 359 (1977); *Commonwealth v. Minnich*, 236 Pa.Super. 285, 344 A.2d 525 (1975); (2) knowledge of the commission of a crime, *see Commonwealth v. Henderson, supra; Commonwealth v. Minnich, supra*; (3) presence at the scene of the crime, *Commonwealth v. Sullivan, supra*; *Commonwealth v. Goodyear*, 235 Pa.Super. 544, 344 A.2d 672 (1975); *Commonwealth v. Manson*, 230 Pa.Super. 527, 327 A.2d 182 (1974); and (4) in some situations, participation in the object of the conspiracy, *Commonwealth v. Wilson, supra*; *Commonwealth v. DiEmidio, supra*; *Commonwealth v. Holman*, 237 Pa.Super, 291, 352 A.2d 159 (1975). However, while such circumstances are insufficient standing alone, they may furnish a web of evidence linking an accused to the alleged conspiracy beyond a reasonable doubt "when viewed in conjunction with each other and in the context in which they occurred." *Commonwealth v. Clark*, 256 Pa.Super. 97, 389 A.2d 619, 621 (1978). *See Commonwealth v. Sullivan, supra.*

In *Commonwealth v. Stephens*, 231 Pa.Super. 481, 331 A.2d 719 (1974), defendant operated a store in which his alleged co-conspirator worked; in addition, the co-conspirator lived with defendant. Defendant, standing in his store two feet away from his alleged co-conspirator overheard him agree to sell some marijuana to a police officer. The defendant remained "mute and unresponsive." Our Court unanimously held the cumulative evidence insufficient to prove conspiracy. Specifically, we found that because the defendant had no prior knowledge of the sale, did not induce, aid or abet the sale at the time of its consummation, and did not thereafter receive any of its proceeds, the "evidence, while supporting an inference of knowledge, cannot support the further inference of agreement." *Id.*, 231 Pa.Super. at 489, 331 A.2d at 723.

We believe that the instant case likewise lacks sufficient evidence to support an inference of corrupt agreement between appellant and his wife. Because the Commonwealth must prove that *both* appellant and his wife, Rochelle Mears,

were guilty of conspiracy in order to prove the guilt of either one, *Commonwealth v. Campbell, supra,* it is appropriate to examine the evidence of Mears' involvement as well as that of appellant.

 On May 12, 1977, appellant agreed to sell 11 bags of heroin to Officer Bongard. There is no evidence that Bongard had ever met appellant or Mears previously or that Mears overheard the initial discussion between Bongard and appellant. After deciding on the terms of the sale, Bongard and appellant then walked to 2711 54th Drive where Mears was sitting on the steps. Clearly, we cannot infer a conspiracy to sell heroin merely from appellant's marital relationship to Mears. *Cf. Commonwealth v. Perdie, supra.* Because 2711 54th Drive was Mears' home and because 8:45 p. m. was not an unusual hour to be outside on a spring night, we also cannot infer that Mears had any unusual, much less sinister, reason for being on the steps at that time. *Compare Commonwealth v. Sullivan, supra,* 472 Pa. at 160, 371 A.2d at 482. Appellant told Bongard to hand the $50 cash to Mears; Bongard did so while appellant retrieved from the building[5] 11 glazed paper bags of what was later confirmed to be heroin and handed them to Bongard in Mears' presence with words to come back anytime.[6] The Commonwealth

**5.** There is no evidence that appellant retrieved the bags from his and Mears' apartment, as opposed to somewhere elsewhere in the building.

**6.** The relevant testimony is as follows:

"Q. What happened after you took the short walk you just described?

"A. [Officer Bongard]: We got in front of 2711 54th Drive. The person later identified as the person's wife was sitting on the steps. This defendant says, "Give the money to my wife,' and he pointed to the co-defendant in this case.

"Q. Excuse me. The defendant asked you to give the money to his wife?

"A. That's correct.

"Q. Do you know that person's name?

"A. Yes, Rochele Mears, M–E–A–R–S.

"Q. Was there any further conversation between Mr. Anderson and the person known as Rochele Mears? What was the last name? Mears?

"A. Yes.

wishes us to infer from Mears' presence on the steps, her holding the $50 cash, witnessing her husband hand 11 bags to Bongard and hearing him then say to come back anytime that she not only knew that an illegal sale of heroin was taking place but also had *agreed* with her husband to sell or aid him in selling the heroin "with the intent of promoting or facilitating" the commission of a crime. We conclude that it is mere speculation and suspicion to infer that Mears knew the nature of the transaction in time to agree to it and greater speculation to infer intent and conspiratorial agreement.

As in *Stephens, supra,* the only knowledge Mears could have had of the sale was "that obtained at the time the unlawful act was committed." *Id.,* 231 Pa.Super. 331 A.2d at 723. Yet we cannot infer that Mears had any inkling concerning the nature of the transaction until appellant returned with the 11 bags. Appellant told Bongard only "Give the money to my wife;" those words in no way indicate an impending illegal sale. To the extent, therefore, that Mears' passive holding of the money may be construed as aiding appellant, she lacked the knowledge at that time which is a requisite for criminal intent. At no time did she make any movement or overt act from which a knowing or even active participation in the sale can be inferred. *Compare Commonwealth v. Garner, supra.* Except for passively holding money handed to her at her husband's request, Mears was as "mute and unresponsive" throughout the transaction as the defendant in *Stephens, supra.* We cannot infer a conspiratorial agreement merely from her presence thereafter when appellant transferred the 11 bags to Bon-

"Q. Was there any further conversation between those two?
"A. I don't recall.
"Q. What happened after the defendant asked you to give money to that woman?
"A. I handed the co-defendant $50.00 in prerecorded currency. Alfred Anderson then went inside 2711 54th Drive. I lost sight of him. When he returned from the building, he handed me eleven glazed paper packets containing alleged Heroin. He then told me anytime I wanted to cop again to come see him.
I left the area with Officer Davis and Officer Taggart and returned to the Narcotic Unit."

gard. *See Commonwealth v. Manson, supra.* In this light, we note that nothing was said in Mears' presence to indicate the contents of the bags.

Based on our above review and analysis of the record, we conclude that the evidence, whether viewed separately or cumulatively, does not support a finding that Mears conspired with appellant.[7] Because it takes at least two to conspire, *Campbell, supra,* it follows that if Mears did not conspire with appellant, appellant did not conspire with Mears. We, therefore, reverse and vacate the judgment of sentence on the criminal conspiracy charge.

Because the lower court erred in convicting and sentencing appellant for criminal conspiracy, we further order the judgment of sentence for selling heroin vacated and the case remanded for resentencing by the lower court. *Commonwealth v. Lockhart,* 223 Pa.Super. 60, 296 A.2d 883 (1972).

Judgments of sentence vacated and case remanded for resentencing consistent with this opinion.

HESTER, J., concurs in result.

7. Our conclusion is supported by the fact that on January 26, 1978 Mears was tried without a jury on identical charges of violating the Drug Act and conspiring with appellant on May 12, 1977 to do same and was acquitted. Because appellant raised only the issue of sufficiency and not whether Mears' subsequent acquittal requires reversal of his conspiracy conviction, we do not rest our decision on that ground. *Cf. Commonwealth v. Blair,* 460 Pa. 31, 33, 331 A.2d 213, 214 n. 1 (1975); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). We note in passing, however, that such a holding—that the subsequent acquittal of one of only two alleged co-conspirators requires the reversal of the other's conspiracy conviction—would be consistent with our case law. *See Commonwealth v. Campbell,* 257 Pa.Super. 160, 390 A.2d 761 (1978) (co-conspirator acquitted prior to defendant's trial); *Commonwealth v. Smythe,* 245 Pa.Super. 75, 369 A.2d 300 (1976) (co-conspirator acquitted at same trial); *Commonwealth v. Hunter,* 240 Pa.Super. 23, 360 A.2d 702 (1976) (same as *Hunter, supra*); *Commonwealth v. Salerno,* 179 Pa.Super. 13, 116 A.2d 87 (1955) (same as *Campbell, supra*). *See also Commonwealth v. Bruno,* 324 Pa. 236, 246, 188 A. 320, 325 (1936) (acquittal of one alleged co-conspirator does not release all unless, of course, only one remains under conviction); *Commonwealth v. Faulknier,* 89 Pa.Super. 454, 461 (1926) (suspend sentence of one conspirator until one or more of his alleged co-conspirators are found guilty; if none is later adjudged guilty at new trial then discharge).