J-S11020-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TREVAUGHN STRIBLING-JACKSON | : | |
| | : | |
| Appellant | : | No. 487 WDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered March 31, 2025
In the Court of Common Pleas of Venango County Criminal Division at
No(s): CP-61-CR-0000077-2024

BEFORE: LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:                **FILED: June 2, 2026**

Appellant, Trevaughn Stribling-Jackson, appeals from the aggregate judgment of sentence of life imprisonment, without the possibility of parole, followed by a consecutive term of 16 to 32 years' incarceration, imposed after a jury convicted him of first-degree murder (18 Pa.C.S. § 2502(a)), aggravated assault (18 Pa.C.S. § 2702(a)(9)), abuse of a corpse (18 Pa.C.S. § 5510), and related offenses.  On appeal, Appellant challenges the discretionary aspects of his sentence, as well as the sufficiency of the evidence to sustain his convictions.  We affirm.

The trial court briefly summarized the facts and procedural history of Appellant's case, as follows:

> This matter arises out of the death of KM ("victim"), a two (2) year-old male.  On December 20, 2023, Caleigh Gladfelter, the victim's mother, reported the child-victim missing to the Oil City Police Department.  Gladfelter reported the child was last seen

alive on December 18, 2023. In the subsequent search for the child, Oil City police officers conducted a search of the victim's residence … in Oil City, Pennsylvania. The victim had been living in the basement of the residence for approximately one month with Gladfelter, Gladfelter's boyfriend ([Appellant]), [the victim's] brother, and another family (Devonte Riedel, Misty Unangst, and her four (4) children). The victim was found deceased without any clothes in an air mattress bag located in the basement of the [residence]. An autopsy performed by the Erie County Medical Examiner's Office determined the manner of death was homicide and the cause of his death was hemorrhagic shock from repeated blunt force trauma to the head, neck, face, abdomen, and extremities.

On March 4, 2024, [Appellant] was charged by formal information with seven (7) counts of criminal conduct. On January 14, 2025, [Appellant] filed a motion to sever count 4, flight to avoid apprehension, from the other counts of criminal conduct. On January 23, 2025, the court granted the motion and severed count 4 from the remaining counts and ordered it to be tried separately. On February 3, 2025, a jury was selected and a three (3) day jury trial began on February 10, 2025.

On February 13, 2025, the jury returned a verdict finding [Appellant] guilty on count 1, first[-]degree murder…; count 2, aggravated assault of a victim less than 13 years old and the defendant 18 years old or older…; count 3, concealment of the whereabouts of a child, … in violation of 18 Pa.C.S.[] § 2909(a); count 5, abuse of a corpse, … in violation of 18 Pa.C.S.[] § 5510; count 6, tampering with or fabricating physical evidence, … in violation of 18 Pa.C.S.[] § 4910(1); and count 7, false identity to law enforcement, … in violation of 18 Pa.C.S.[] § 4914(a).

On March 31, 2025, [Appellant] was sentenced to an aggregate term of life imprisonment followed by a consecutive period of incarceration [of] a minimum sixteen (16) years to a maximum thirty-two (32) years. [Appellant] was given time served credit for four-hundred and sixty-seven (467) days for time previously served in jail. Also on March 31, 2025, the Commonwealth filed a motion for *nolle prosequi* of count 4, flight to avoid apprehension[,] which was granted by an order of court that same day. On April 9, 2025, [Appellant] filed a timely post-sentence motion. On April 16, 2025, the court denied the post[-]sentence motion.

[Appellant] filed his notice of appeal on April 16, 2025[,] and Tina Fryling, Esquire, entered her appearance on behalf on [Appellant]. On April 21, 2025, the court ordered [Appellant to] file a concise statement of issues complained of on appeal pursuant to Pa.R.A.P. 1925(b).  On May 12, 2025, [Appellant] filed a concise statement.

Trial Court Opinion (TCO), 7/15/25, at 1-3 (footnote and unnecessary capitalization omitted; some formatting altered).  The trial court filed its Rule 1925(a) opinion on July 15, 2025.

Herein, Appellant states two issues for our review:

[I.] The trial court abused its discretion by imposing an excessive sentence in regard[] to its length, consecutiveness, departing from the sentencing guidelines, and failing to consider relevant mitigating factors.

[II.] The evidence presented by the Commonwealth in this case was not sufficient for a jury to return a verdict of guilty for any of the charges.

Appellant's Brief at 2 (footnote and emphasis omitted).[1]

In Appellant's first issue, he challenges the discretionary aspects of his sentence, claiming

the sentences given were unreasonable and an abuse of discretion based on the fact … they were run in terms that … were ordered to be served consecutive to each other rather than concurrent to each other.  He further argues that since the various crimes were all related and run from the same incident, the [court] should have made the sentences concurrent.

*Id.* at 11.

In Appellant's second issue, he contends the evidence was insufficient to support the jury's verdict for any of his offenses because: (1) no direct

---

[1] Appellant indicates his first issue "does not include the false identity to law enforcement charge for which [he] was also convicted."  Appellant's Brief at 2 n.1 (unnecessary capitalization and internal quotation marks omitted).

evidence identified him as the perpetrator, *id.* at 15; (2) "[o]nly Devonte Reidel indicated to the police that he saw [Appellant] go into the basement on the day that the victim's life was taken, but he then indicated that he couldn't actually remember whether it was Sunday or Monday[,] *id.*; and (3) a light colored hair was found on the victim, but Appellant has dark hair. *Id.*; *see also id.* at 13-23 (Appellant's repeating these same arguments in challenging the sufficiency of the evidence to sustain each of his offenses).

In assessing Appellant's issues, we have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have examined the well-reasoned opinion of the Honorable Matthew T. Kirtland, President Judge of the Court of Common Pleas of Venango County. We conclude Judge Kirtland's comprehensive opinion accurately disposes of the issues presented by Appellant.[2] Accordingly, we adopt Judge Kirtland's

---

[2] We note that, although Judge Kirtland acknowledges it is necessary for Appellant to "raise a substantial question regarding the appropriateness of his sentence under the Sentencing Code" to invoke our jurisdiction to review Appellant's sentencing claim, Judge Kirtland does not explicitly state whether Appellant satisfied this requirement. *See* TCO at 7 (citing *Commonwealth v. Radecki*, 180 A.3d 441, 467 (Pa. Super. 2018)). *See also* Pa.R.A.P. 2119(f) ("An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence."). In Appellant's Rule 2119(f) statement, he contends the court abused its discretion in imposing consecutive sentences where his crimes all arose from the same incident. *See* Appellant's Brief at 11. This Court has declared:

> [A] defendant may raise a substantial question where he receives
> consecutive sentences within the guideline ranges if the case

*(Footnote Continued Next Page)*

opinion as our own and affirm Appellant's judgment of sentence for the reasons set forth therein.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

6/2/2026

---

involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

***Commonwealth v. Diehl***, 140 A.3d 34, 45 (Pa. Super. 2016) (citation omitted). Because here, Appellant raises more than a bald claim of excessiveness, we conclude he has raised a substantial question for our review. Notwithstanding, we agree with Judge Kirtland's thoughtful and detailed discussion of why Appellant's sentencing challenge is substantively meritless. TCO at 7-16.

IN THE COURT OF COMMON PLEAS OF VENANGO COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA :
:
v. : C.R. No. 77-2024
:
TREVAUGHN STRIBLING-JACKSON, :
    *Defendant/Appellant* :
:
:

## 1925(b) OPINION

AND NOW, this 15th day of July, 2025, this Court enters its opinion pursuant to Pa.R.A.P. 1925(b) in response to the Defendant's Notice of Appeal, filed on April 16, 2025. Defendant appeals from the Order of Sentence entered on March 31, 2025. On April 9, 2025, the Defendant filed a Post-Sentence Motion which was denied by an Order of Court on April 16, 2025. On May 12, 2025, the Defendant filed the instant concise statement.

## I. FACTUAL AND PROCEDURAL HISTORY

This matter arises out of the death of K.M. ("victim"), a two (2) year-old male. On December 20, 2023, Caleigh Gladfelter, the victim's mother, reported the child-victim missing to the Oil City Police Department. Gladfelter reported the child was last seen alive on December 18, 2023. In the subsequent search for the child, Oil City police officers conducted a search of the victim's residence, ▮▮▮▮▮▮▮▮ in Oil City, Pennsylvania. The victim had been living in the basement of the residence for approximately one month with Gladfelter, Gladfelter's boyfriend (the Defendant), his brother, and another family (Devonte Riedel, Misty Unangst, and her four (4) children). The victim was found deceased without any clothes in an air mattress bag located in the basement of the ▮▮▮▮▮▮▮▮ An autopsy performed by the Erie County Medical Examiner's Office determined the manner of death was homicide and the cause of his

1

death was hemorrhagic shock from repeated blunt force trauma to the head, neck, face, abdomen, and extremities.

On March 4, 2024, Defendant was charged by Formal Information with seven (7) counts of criminal conduct. On January 14, 2025, the Defendant filed a Motion to sever Count 4, Flight to Avoid Apprehension, from the other counts of criminal conduct. On January 23, 2025, the court granted the motion and severed Count 4 from the remaining counts and ordered it to be tried separately. On February 3, 2025, a jury was selected and a three (3) day jury trial began on February 10, 2025.

On February 13, 2025, the jury returned a verdict finding the Defendant guilty on Count 1, First Degree Murder, a Homicide 1, in violation 18 Pa. C.S.A. § 2502(a); Count 2, Aggravated Assault of a victim less than 13 years old and the Defendant 18 years old or older, a felony 1, in violation of 18 Pa. C.S.A. § 2702(a)(9); Count 3, Concealment of the Whereabouts of a Child, a felony 3, in violation of 18 Pa. C.S.A. § 2909(a); Count 5, Abuse of a Corpse, Misdemeanor 2, in violation of 18 Pa. C.S.A. § 5510; Count 6, Tampering with or Fabricating Physical Evidence, a misdemeanor 2, in violation of 18 Pa. C.S.A. § 4910(1); and Count 7, False Identity to Law enforcement, a misdemeanor 3, in violation of 18 Pa. C.S.A. § 4914(a).

On March 31, 2025, the Defendant was sentenced to an aggregate term of life imprisonment followed by a consecutive period of incarceration a minimum sixteen (16) years to a maximum thirty-two (32) years. The Defendant was given time served credit for four-hundred and sixty-seven (467) days for time previously served in jail. Also on March 31, 2025, the Commonwealth filed a motion for *nolle prosequi* of Count 4, Flight to Avoid Apprehension

which was granted by an order of court that same day. On April 9, 2025, the Defendant filed a timely Post-Sentence Motion.[1] On April 16, 2025, the Court denied the Post Sentence Motion.

The Defendant filed his notice of appeal on April 16, 2025 and Tina Fryling, Esquire, entered her appearance on behalf on the Defendant. On April 21, 2025, the Court ordered the Defendant file a Concise Statement of Issues Complained of on Appeal pursuant to Pa. R.A.P. 1925(b). On May 12, 2025, the Defendant filed a concise statement. In his Concise Statement, Defendant raises the following matters on appeal:

1. The defendant asserts that the trial court abused its discretion by giving him an excessive sentence both in length and in its consecutiveness. The sentences at Count 2, Count 3, Count 5, Count 6, and Count 7 were run consecutive to Count 1 rather than concurrent. Further, the sentences included a guideline departure up to the highest minimum despite the fact that all of the counts stemmed from the same incident/incidents. Furthermore, the court failed to properly consider comments made by trial counsel regarding the defendant's background and family history which could have mitigated the sentence in this case.

2. The evidence presented by the Commonwealth in this case was not sufficient to convict the Defendant of Criminal Homicide -, First Degree Murder 18 Pa.C.S.A. § 2501, 2502(a): A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being. No direct evidence was presented at time of trial that specifically identified the defendant as the person who perpetrated this crime.

   The only alleged evidence the defendant was the person who committed this crime was the testimony of Devonte Riedel, Devonte Riedel, who testified the defendant was last seen late in the evening of Monday December 18, 2023 with the decedent, descending stairs into the basement. However, on cross examination, Riedel admitted he was unsure what exact date he in fact observed the defendant and the decedent descending the stairs. Furthermore, defense presented evidence that a blonde/light colored hair (the defendant being a black male with black hair) was found stuck on a wooden object next to the location where the decedent's body was found,

---

[1] In his Post Sentence Motion, the Defendant raised the following issues: (1) the sentence imposed was excessive and constituted an abuse of discretion, and (2) the evidence presented at trial was insufficient to support the conviction. In his second issue, the Defendant asserts an insufficiency of the evidence claim for all six (6) counts of criminal conduct.

3

but Appellant is a black male with black hair. No DNA testing was completed on the said hair to identify its owner.

3. The evidence presented by the Commonwealth in this case was not sufficient to convict the Defendant of Aggravated Assault — Victim less than 13 and Defendant 18 or older, 18 Pa.C.S.A.§ 2702(a)(9): A person is guilty of aggravated assault if he attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to a child less than 13 years of age, by a person 18 years of age or older. No direct evidence was presented at time of trial that specifically identified the Appellant as the person who perpetrated this crime. No eye witnesses to this crime, no video evidence, and no admission by Appellant was presented at trial.

The only alleged evidence the defendant was the person who committed this crime was the testimony of Devonte Riedel, Devonte Riedel, who testified the defendant was last seen late in the evening of Monday December 18, 2023 with the decedent, descending stairs into the basement. However, on cross examination, Riedel admitted he was unsure what exact date he in fact observed the defendant and the decedent descending the stairs. Furthermore, defense presented evidence that a blonde/light colored hair (the defendant being a black male with black hair) was found stuck on a wooden object next to the location where the decedent's body was found, but Appellant is a black male with black hair. No DNA testing was completed on the said hair to identify its owner.

4. The evidence presented by the Commonwealth in this case was not sufficient to convict the Defendant of Concealment of Whereabouts of Child, 18 Pa.C.S.A.§2909: A person who removes a child from the child's known place of residence with the intent to conceal the child's whereabouts from the child's parent or guardian, unless concealment is authorized by court order.

The only alleged evidence the defendant was the person who committed this crime was the testimony of Devonte Riedel, Devonte Riedel, who testified the defendant was last seen late in the evening of Monday December 18, 2023 with the decedent, descending stairs into the basement. However, on cross examination, Riedel admitted he was unsure what exact date he in fact observed the defendant and the decedent descending the stairs. Furthermore, defense presented evidence that a blonde/light colored hair (the defendant being a black male with black hair) was found stuck on a wooden object next to the location where the decedent's body was found, but Appellant is a black male with black hair. No DNA testing was completed on the said hair to identify its owner.

4

5. The evidence presented by the Commonwealth in this case was not sufficient to convict the Defendant of Abuse of Corpse, 18 Pa.C.S.A.§ 5510: Except as authorized by law, a person who treats a corpse in a way that he knows would outrage ordinary family sensibilities commits a misdemeanor of the second degree.

   No direct evidence was presented at time of trial that specifically identified the defendant as the person who perpetrated this crime— No eye witnesses to this crime, no video evidence, no admission by the defendant was presented at trial. The only alleged evidence the defendant was the person who committed this crime was the testimony of Devonte Riedel, Devonte Riedel, who testified the defendant was last seen late in the evening of Monday December 18, 2023 with the decedent, descending stairs into the basement. However, on cross examination, Riedel admitted he was unsure what exact date he in fact observed the defendant and the decedent descending the stairs. Furthermore, defense presented evidence that a blonde/light colored hair (the defendant being a black male with black hair) was found stuck on a wooden object next to the location where the decedent's body was found, but Appellant is a black male with black hair. No DNA testing was completed on the said hair to identify its owner.

6. The evidence presented by the Commonwealth in this case was not sufficient to convict the Defendant of Tampering with or Fabricating Physical Evidence, 18 Pa.C.S.A.§4910(1): A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he: (1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation.

   No direct evidence was presented at time of trial that specifically identified the defendant as the person who perpetrated this crime. No eye witnesses to this crime, no video evidence, no admission by the defendant was presented at trial. The only alleged evidence the defendant was the person who committed this crime was the testimony of Devonte Riedel, Devonte Riedel, who testified the defendant was last seen late in the evening of Monday December 18, 2023 with the decedent, descending stairs into the basement. However, on cross examination, Riedel admitted he was unsure what exact date he in fact observed the defendant and the decedent descending the stairs. Furthermore, defense presented evidence that a blonde/light colored hair (the defendant being a black male with black hair) was found stuck on a wooden object next to the location where the

decedent's body was found, but Appellant is a black male with black hair. No DNA testing was completed on the said hair to identify its owner.

*See* Defendant's Concise Statement, 01/24/2025, p.2

## II. DISCUSSION

Upon review of the Defendant's concise statement, the language posited for issues 2 through 6 is substantially identical for each raised issue. Appellant counsel does not concisely state the issues on appeal with specificity and particularity and this results in the court providing redundant arguments. The Court will address the Defendant's six (6) issues separately and in the order presented.

### 1. Challenge to the Sentence

Defendant asserts that the court abused its discretion by giving an excessive sentence in length, in consecutiveness, in departing from the guidelines, and in failing to consider mitigating factors. *See Defendant's Concise Statement*, 5/12/2025, ¶ 5. The Court interprets Defendant's first claim as containing four (4) sub-issues: (1) a challenge to the excessive nature of the sentence based on its length, (2) a challenge to the consecutive nature of the sentence, (3) a challenge to the guideline departure, and (4) a challenge for failing to consider mitigating circumstances. The Court believes they are distinct issues required to be addressed separately.[2]

### a. *Excessive Sentence*

In Defendant's first issue, he asserts that the court abused its discretion by imposing an excessive sentence in length. *See Defendant's Concise Statement*, 5/12/2025, ¶ 5. A sentence

---

[2] This court is frustrated by appellate counsel continually raising vague issues on appeal that require the court to consider sub-issues. It forces this court to engage in excessive and time-consuming analysis. Pa.R.A.P. 1925(b)(ii) requires a concise statement to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." A 1925(b) statement which is so "redundant, vague, incoherent, or confusing as to prevent the lower court from engaging in a meaningful analysis result in waiver of all claim presented." *Commonwealth v. Ray*, 134 A.3d 1109 (Pa. Super.2016). Further, "when a court has to guess what issues an appellant is appealing, that is not enough for a meaningful review." *Id.* at 1114.

may be challenged either on the legality of the sentence or on discretionary aspects. "A sentence is illegal ... if the trial court exceeds its statutory authority in imposing it." *Commonwealth v. Starr*, 234 A.3d 755 (Pa. Super.2020). The Court finds that the issue raised here does not implicate a challenge to the legality of the sentence because the Defendant does not assert the sentencing Court exceeded its statutory authority. Rather, the court interprets the Defendant's first issue as a challenge to the discretionary aspects of the sentence. *Commonwealth. v. Lutes*, 793 A.2d 949 (Pa. Super. 2002) (finding appellant's claim that the sentence was manifestly excessive challenges the sentencing court's discretion).

In order to challenge the discretionary aspects of a sentence, the Defendant must raise a substantial question regarding the appropriateness of his sentence under the Sentencing Code. *Commonwealth v. Radecki*, 180 A.3d 441, 467 (Pa. Super. 2018). The determination of what constitutes a substantial question must be evaluated on a case-by case basis. *Commonwealth v. Battles*, 169 A.3d 1086, 1090 (Pa. Super. 2017). Generally, a defendant raises a substantial question when he sets forth a colorable argument that a sentence is either (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. *Radecki* at 467.

Here, the Court's sentence was firmly grounded in the Sentencing Code and is not contrary to the fundamental norms of sentencing. The Defendant was sentenced to life without the possibility of parole on Count 1, First Degree Murder, in violation of 18 Pa. C.S.A. § 2502(a), a Homicide 1. Under 18 Pa. C.S.A. § 1102(a)(1), First-Degree Murder carries a mandatory sentence of life imprisonment without parole.

On the remaining counts, the Defendant was sentenced to a period of incarceration where the minimum sentence was either a departure from the Sentencing Guidelines or an aggravated

range sentence but complied with the statutory maximums in the Sentencing Code.[3] On Count 2, Aggravated Assault of a minor in violation of 18 Pa. C.S.A. § 2702(a)(9), a felony 1, the Offense Gravity Score is twelve (12) and the Defendant had a Prior Record Score of (3). The standard range is sixty-eight (68) to eighty-four (84) months. The aggravated range included an additional twelve (12) months. Under 18 Pa. C.S.A. § 1103, a sentence of imprisonment for a felony 1 may be up to the statutory minimum of twenty (20) years. The Defendant was sentenced to a term of imprisonment of a minimum of ten (10) years to a maximum twenty (20) years.

On Count 3, Concealment of the Whereabouts of a Child, in violation of 18 Pa. C.S.A. § 2909(a) a felony 3, the Offense Gravity Score is four (4) and the Defendant had a Prior Record Score of (3). The standard range is three (3) to fourteen (14) months. The aggravated range included an additional three (3) months. Under 18 Pa. C.S.A. § 1103, a sentence of imprisonment for a felony 3 may not exceed the statutory maximum of seven (7) years. The Defendant was sentenced to a term of imprisonment of a minimum of forty-two (42) months to a maximum of seven (7) years.

On Count 5, Abuse of a Corpse, in violation of 18 Pa. C.S.A. § 5510, a misdemeanor 2, the Offense Gravity Score is three (3) and the Defendant had a Prior Record Score of (3). The standard range is restorative sanctions to less than twelve (12) months. The aggravated range included an additional three (3) months. Under 18 Pa. C.S.A. § 1104, a sentence of imprisonment for a misdemeanor 2 may not exceed the statutory max of two (2) years. The Defendant was sentenced to a term of imprisonment of a minimum of one (1) year to a maximum of two (2) years.

---

[3] At the time of the sentencing hearing, Defense counsel agreed to the gravity score, prior record, aggravating and mitigating sentence range and standard range for each offense.

8

On Count 6, Tampering with or Fabricating Physical Evidence in violation of 18 Pa. C.S.A. § 4910(1), a misdemeanor 2, the Offense Gravity Score is two (2) and the Defendant had a Prior Record Score of (3). The standard range is restorative sanctions to four (4) months. The aggravated range included an additional three (3) months. Under 18 Pa. C.S.A. § 1104, a sentence of imprisonment for a misdemeanor 2 may not exceed the statutory maximum of two (2) years. The Defendant was sentenced to a term of imprisonment of a minimum of one (1) year to two (2) years.

On Count 7, False Identity to Law enforcement in violation of 18 Pa. C.S.A. § 4914(a), a misdemeanor 3, the Offense Gravity Score is one (1) and the Defendant had a Prior Record Score of (3). The standard range is restorative sanctions to three (3) months. The aggravated range included an additional three (3) months. Under 18 Pa. C.S.A. § 1104, a sentence of imprisonment for a misdemeanor 3 may not exceed the statutory maximum of one (1) year. The Defendant was sentenced to a term of imprisonment of a minimum of six (6) months to a maximum of twelve (12) months.

. Together, the Defendant was sentenced to a cumulative term of imprisonment of a minimum of sixteen (16) to a maximum of thirty-two (32) years consecutive to life without parole. Each individual sentence complied with the statutory maximum and does not violate the Sentencing Code. Furthermore, each individual sentence is consistent with the norms of sentencing. Under 42 Pa.C.S.A. § 9721(b), the sentencing court must consider: (1) the protection of the public, (2) gravity of offense in relation to impact on the victim and community, and (3) the rehabilitative needs of the defendant when crafting its sentence. In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors

9

such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference. *Commonwealth v. Ellis*, 700 A.2d 948, 958 (Pa. Super. 1997).

Here, the Defendant murdered a two-year old in a savage, cruel, and brutal way. Dr. Vey testified that the victim died from injuries sustained from repeated blunt force trauma to the head, chest, abdomen, and extremities delivered with a large amount of force. *Trial Tr.*, 02/11/2025, pp. 4-50; *Commonwealth Ex. 29*, 2/11/2025. The autopsy report indicated that the victim had 98 bruises and lacerations all over his body. Dr. Vey found the victim's heart lacerated, lungs ruptured, broken ribs, spleen lacerated, pancreas torn in two, kidney torn, and the small intestine bruised among many other injuries. *Id.* Dr.Vey also observed thermal abrasions on the victim's buttocks indicative of a cigarette burn. *Id.* Dr. Vey testified that the injuries sustained by the child-victim were consistent in severity with the types of injuries suffered in a fatal car crash. *Trial Tr.*, 2/11/2025, p.43. Dr.Vey's testified that the victim's injuries were consistent with deliberate and repeated strikes. *Trial Tr.*, 2/11/2025, pp. 43-47.

The Defendant aggravated the offense by removing the victim's clothes before hiding the victim's body in an air mattress bag in the basement area and misleading law enforcement in their investigation. Defendant also was in a position of trust with the victim. Defendant was Gladfelter's boyfriend and Gladfelter entrusted the victim's health, safety, and welfare to the Defendant while she was at work. *Trial Tr.*, 02/10/2025, p. 67. The length of the Defendant's sentence is meant to reflect the gravity of the offenses, the impact it had on the victim's family, and address the sentencing court's determination that the Defendant cannot be rehabilitated. *Sentencing Tr.*, 03/31/2025, p. 23.

10

The Defendant is not entitled to a volume discount because he committed several offenses. *See Commonwealth v. Hoag*, 445 Pa.Super. 455, 665 A.2d 1212, 1214 (Pa. Super.1995); *see also Commonwealth v. Prisk*, 13 A.3d 586 (Pa. Super. 2011)(finding a 633-to-1,500-year sentence is not manifestly excessive); *Commonwealth v. Dodge*, 957 A.2d 1198 (Pa. Super. 2008) (finding an aggregate imprisonment sentence of 58 ½ to 124 years is not excessive). The Court properly analyzed all relevant factors at the time of sentencing to determine an appropriate sentence. Therefore, the sentence is not excessive in length and the Defendant's claim is meritless.

### b. Consecutive Sentences

The Defendant next asserts that the court abused its discretion in imposing an excessive sentence because Counts 2 through 7 were imposed consecutively to the life sentence imposed on Count 1. *See Defendant's Concise Statement*, 5/12/2025, ¶ 5. A sentencing judge has discretion to impose a sentence concurrently or consecutively to other sentences being imposed simultaneously or to sentences already imposed. *See Commonwealth v. Mastromarino*, 2 A.3d 581 (Pa. Super. 2010)(and cases cited therein). The appellate court will not disturb consecutive sentences unless the aggregate sentence is grossly disparate" to the defendant's conduct, or "viscerally appear[s] patently unreasonable." *Commonwealth v. Gonzalez-Dejusus*, 994 A.2d 595, 599 (Pa. Suer. 2010).

Here, The Court found that the Defendant's conduct warranted the imposition of consecutive sentences:

> **THE COURT:** The evidence presented at the trial was very disturbing. The testimony and evidence revealed the significant injuries and damages sustained by ▮▮▮▮ The nature of this crime can best be described as savage, cruel, and brutal. However, words cannot truly capture the severity and nature of this trauma. Dr. Vey attempted by testifying to the lacerations, abrasions, and bruising. He could not accurately state the number of bruises due to

11

there being bruises on top of bruises. The pictures presented from the autopsy captured the brutal nature of your actions. The testimony further indicated the bruises were at different levels of healing indicating that not all trauma was caused in any one event. This signified multiple traumatic events that occurred over a period of time.

*Sentencing Tr.*, 03/31/2025, pp. 20-21.

In considering the facts cited above, the Court stated the following at the sentencing hearing:

**THE COURT:** After considering all the factors in this case, the Court will impose the maximum sentence allowable under law. The punishment must reflect the severity of the crime committed and there is no graver an offense that--than that of intentionally taking the life of a young child. For murder in the first degree, this Court can only sentence you to life in prison without the possibility of parole. For the remaining counts, the Court will be deviating from the guidelines. This Court will not be giving you a volume discount and will not run any of the counts concurrent. Each count is convicted demonstrated separate in distinct conduct that this Court must address with a separate independent sentence. To do so would otherwise reward you for your disturbing conduct. The intent of this sentence is to ensure that you never leave a prison cell as your conduct and history indicate that you will reoffend if you are not incarcerated and that any lesser sentence would depreciate the seriousness of this offense.

*Sentencing Tr.*, 03/31/2025, pp. 23 -24.

Based on these findings, the court believed a consecutive sentence was necessary to protect the public, reflect the gravity of the offenses, and address the Defendant's rehabilitative needs. In determining whether a sentence is manifestly excessive, the appellate court gives great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference. *Commonwealth v. Ellis*, 700 A.2d 948, 958 (Pa. Super. 1997). The Court incorporates the statement of the facts referenced in the Court's analysis for Excessive Sentences. Further, the Defendant is not entitled to a volume discount because he

12

committed several offenses. *See Commonwealth v. Hoag*, 445 Pa.Super. 455, 665 A.2d 1212, 1214 (Pa. Super.1995). Therefore, the imposition of a consecutive sentence is not an abuse of discretion and the Defendant's claim is meritless.

### c. *Sentencing Guideline Departure*

The Defendant asserts that the sentencing court abused its discretion by departing from the sentencing guidelines. *See Defendant's Concise Statement*, 5/12/2025, ¶ 5. The sentences imposed on Counts 2, 3, 5, and 6 are upward departures from the sentencing guidelines and Count 7 is a aggravated range sentence. However, the sentencing guidelines are purely advisory in nature, not mandatory. *Commonwealth v. Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007). A sentencing court, in its discretion, may depart from the guidelines as long as it does not exceed the maximum sentence allowed by statute. *Id.* at 1118-19. When a court deviates from the sentencing guidelines, it must state the reasons for doing so on the record. *See Commonwealth v. McLaine*, 150 A.3d 70, 76 (Pa. Super. 2016).

Here, the Sentencing Court did not exceed the maximum allowable sentence allowed under statute and stated the reasons for departing from the sentencing guidelines on the record. *See Sentencing Tr.*, 03/31/2025, p. 29. The sentencing court found that the Defendant's crime, the murder of a two-year old and the Defendant's attempt to hide the crime, was savage, cruel, and brutal in nature. *Sentencing Tr.*, 03/31/ 2025, p. 20. At the Sentencing Hearing, the Court stated the following:

> **THE COURT:** It's hard to fathom any reason that would lead someone to inflict this type and amount of trauma on a two-year-old child. ▮▮▮▮ did not stand a chance. Words cannot accurately reflect the horror, pain, and fear ▮▮▮▮ went through in his final moments. The moments where he finally succumbed to his injuries. But your actions didn't stop with the brutal beating and killing of a two-year-old child. The coverup was equally disturbing. You attempted to conceal and destroy evidence,

13

hide your crime by folding the child into an air mattress bag, removing the child's clothing, washing away blood stains, and hiding the bag behind miscellaneous items in a basement. You then slept in the same room as the body and went about your day as if nothing had happened. The Court cannot understand how you slept in the same basement area with ███████ deceased, rolled up in a bag.

*Sentencing Tr.*, 03/31/2025, p. 22.

At the time of his arrest, the Defendant had multiple warrants for his arrest. *Id.* at 23. Throughout the proceedings, the Sentencing Court did not observe the Defendant display any remorse for his actions. *Id.* at 20. Accordingly, the Sentencing Court stated the following:

> **THE COURT:** The sentence imposed on Counts Two, Three, Five, Six and Seven are guideline departures necessary for the public protection considering the gravity of the offense--offenses and vulnerability of the victim and the Defendant's abuse of a position of trust. The Court determines that any lesser sentence would depreciate the seriousness of the offenses and the Court imposed total confinement because the conduct of the Defendant indicates he will commit another crime if not imprisoned.

*Id.* at 29.

The only part of the Defendant's sentence not strictly guided by the Sentencing Code was the imposition of the sentences to run consecutive, not concurrent, to the life sentence. It is well settled that the sentencing judge has discretion to impose a sentence concurrently or consecutively to other sentences being imposed simultaneously or to sentences already imposed. *See Commonwealth v. Mastromarino*, 2 A.3d 581 (Pa. Super. 2010)(and cases cited therein). In exercising this discretion, courts have a duty to impose a sentence that is "consistent with the protection of the public, the gravity offense as it relates to the impact on the life of the victim and on the community, and rehabilitative needs of the defendant. 42 Pa. C.S. § 9721(b).

As stated in the analysis for an excessive sentence, the facts establish the Defendant assaulted, murdered, and abused the corpse of a two (2) year old victim. The crimes were

14

predatory, heinous, and anti-social. At the time of his arrest the Defendant absconded from supervision and had warrants out for his arrest. The Sentencing Court departed from the guidelines because it felt it was necessary to impose a sentence that reflected the gravity of the crimes and to deny the Defendant the opportunity to reoffend in the future. The Sentencing Court is given great discretion in formulating its sentences. *Commonwealth v. Ellis*, 700 A.2d 948, 958 (Pa. Super. 1997). Therefore, the Sentencing court did not abuse its discretion in departing from the sentencing guidelines and the Defendant's claim is without merit.

### d. Mitigating Factors

The Defendant asserts the court abused its discretion in failing to consider the Defendant's mitigating factors. *See Defendant's Concise Statement*, 5/12/2025, ¶ 5. It is well-established that "a claim of inadequate consideration of mitigating factors does not raise a substantial question." *Commonwealth v. Disalvo*, 70 A. 3d 127, 133 (Pa. Super. 2013). Further, when a Pre- Sentence Investigation Report (PSI) exists, it is presumed that "the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Watson*, 228 A.3d 928, 936 (Pa. Super. 2020) (citation omitted).

The Defendant's claim that the Sentencing court failed to consider the mitigating factors is belied by the record. The Sentencing Court stated on the record the court's sentence was informed by a PSI, the gravity of the offenses charged, any mitigating factors like family history, the criminal history of the Defendant, the facts presented at trial, the Defendant's demeanor during the proceedings, and the nature and circumstances of the offenses.

> THE COURT: Mr. Jackson, sentencing court is to consider a number of factors generally guided by public protection, the rehabilitative needs of the Defendant and the gravity of the particular offense. I considered those circumstances, including the crimes charged and convicted, the facts set forth at trial, the

15

prior criminal record, any lawful motive that may existed, the lack of remorse, general morale character, predisposition to commit further crimes, and all other relevant factors. I reviewed and considered all the information set forth in the PSI and all statements and arguments made here at sentencing. The victim impact statements, and I also considered the recommended guideline ranges.

*Sentencing Tr.,* 03/31/2025, p. 20.

The sentencing court did not abuse its discretion when it considered the facts of the crime, the background of the Defendant, and sentencing norms as required by statute. The Defendant's sentence reflects the Defendant's criminal conduct. The sentence imposed took into account each separate crime perpetrated on the victim and imposed a sentence necessary to recognize the specific harm caused. He is not entitled to a volume discount because he committed multiple offenses. *See Commonwealth v. Hoag,* 445 Pa.Super. 455, 665 A.2d 1212, 1214 (Pa. Super.1995). The sentence imposed was not excessive and the Defendant's claim is meritless.

2. **Sufficiency of the Evidence for Count 1 - First Degree Murder**

The Defendant asserts that the evidence presented was not sufficient for a jury to return a guilty verdict for first-degree murder. The Defendant claims that no direct evidence was presented at the time of trial that identified the Defendant as the perpetrator of the crime. *See Defendant's Concise Statement,* 5/12/2025, ¶ 6. To support his claim, the Defendant asserts that Devonte Riedel's testimony witnessing the Defendant and victim descend together into the basement on the night of the victim's disappearance is unreliable because on cross examination he was unsure of what date he observed the two together. *Id.* Furthermore, the Defendant presented evidence at trial that a blonde hair, not the Defendant's black hair, was found on a wooden object near where the decedent's body was located. *Id.*

As an initial matter, this Court struggles to parse out the nature of this claim because a plain text reading of the Defendant's concise statement oscillates between a purported challenge

16

to the sufficiency of the evidence and a challenge to the weight of the evidence. Challenges to the weight of the evidence and sufficiency of the evidence are two distinct legal claims. *See Commonwealth. v. Widmer*, 560 Pa. 308, 744 A.2d 745 (Pa. 2000). The Defendant does not separate the issues for consideration but rather blends the claims together.

A challenge to the sufficiency of the evidence is when a defendant asserts that the Commonwealth has failed to establish each material element of the crime charged. *See Commonwealth. v. Widmer*, 560 Pa. 308, 744 A.2d 745 (Pa. 2000). In asserting a challenge to the sufficiency of the evidence, the defendant must "specify the element or elements upon which the evidence is insufficient." *Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa. Super. 2015)(stating appellant's claim that evidence was "not sufficient" fails "to specify the element or elements upon which the evidence is insufficient").

Whereas, a challenge based on the weight of the evidence is a claim that the fact-finder reached a verdict not supported by the most persuasive evidence. *See Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177 (Pa. 1994). A weight challenge is successful where "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *See Commonwealth v. Thompson*, 648 A.2d 315 (Pa. 1994).

On the one hand, the Defendant uses the words "not sufficient" and asserts that the Commonwealth failed to present evidence identifying the Defendant as perpetrator of the crime. *See Concise Statement*, 05/12/2025, ¶ 6. Identity of the perpetrator is an implicit element of every crime. *See Commonwealth v. Harris*, 315 A.3d 26 (Pa. 2024) ("[i]t is generally true 'that a crime conceptually consists of three elements: 'First, the occurrence of the specific kind of injury or loss ...; secondly, somebody's criminality (in contrast, *e.g.*, to accident) as the source of

17

the loss, — these two together involving the commission of a crime by somebody; and, thirdly, the accused's identity as the doer of this crime'"). A reading of the defendant's concise statement in this manner would classify the Defendant's claim as a challenge to the sufficiency of the evidence.

On the other hand, the Defendant goes farther than simply asserting the Commonwealth's evidence fails to identify the Defendant. The Defendant also cites contradictory evidence (Devonte Riedel's testimony and lack of DNA evidence) and asserts the Commonwealth has not met their burden of proof considering the contradictory evidence. This is more similar to a weight of the evidence claim. Therefore, the Court will analyze the Defendant's claim under both a sufficiency of the evidence and a weight of the evidence analysis in order to address both possible interpretations of the Defendant's ambiguous claim.[4]

In analyzing the sufficiency claim, the Defendant miscategorizes both the evidentiary standard and the facts. In order to sustain a conviction for first degree murder, the Commonwealth must prove: (1) that the defendant acted with the specific intent to kill, (2) that a human being was unlawfully killed, (3) that the person accused did the killing, and (4) that the killing was done with deliberation. 18 Pa. C.S. § 2502(a); *Commonwealth v. Bronshtein*, 691 A.2d 907, 903 (Pa. 1997), *cert. denied* 522 U.S. 936 (1997). The crime is established by sufficient evidence when, "accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed by the factfinder could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or

---

[4] The Court recognizes that when there are two reasonable interpretations of the Defendant's claim, it is ambiguous. Ambiguous claims are waived for lack of specificity. See Pa. RA.P. 1925(b)(4). In addition, Pa.R.A.P. 1925(b)(ii) requires a concise statement to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." A 1925(b) statement which is so "redundant, vague, incoherent, or confusing as to prevent the lower court from engaging in a meaningful analysis result in waiver of all claim presented." *Commonwealth v. Ray*, 134 A.3d 1109 (Pa. Super.2016). The Defendant's claims are therefore waived. Nevertheless, the Court will address the merits of the Defendant's possible claim.

18

crimes of which he has been convicted." *Commonwealth v. Hamm,* 378 A.2d 1219, 1222 (Pa.1977).

The Defendant asserts the Commonwealth failed to present any *direct* evidence identifying the Defendant as the perpetrator of the crime. *Defendant's Concise Statement,* 05/12/2025, ¶ 5. However, the Commonwealth does not need direct evidence to meet their burden. The Commonwealth may use wholly circumstantial evidence to discharge its burden of showing the accused intentionally killed the victim, and circumstantial evidence can itself be sufficient to prove any or every element of the crime. *Commonwealth. v. Perez,* 93 A.3d 829 (Pa. 2014). Importantly, the fact finder may infer that the custodian of a child-victim is the perpetrator of the crime when the child was in the custodian's care when the injuries occurred:

> where an adult is given sole custody of the child of tender years for a period of time and where during that time the child sustains injuries which may be caused by criminal agency, the finder of fact may examine any explanation offered and, if they find that explanation to be wanting, they may reject it and find the person having custody of the child responsible for the wounds.

*Commonwealth v. Meredith,* 416 A.2d 481·(Pa. 1980).

Accepting as true all evidence offered by the Commonwealth, the victim was in the Defendant's custody and control when he was last seen alive on December 18, 2023. Caleigh Gladfelter, the victim's mother, was at work from 2 P.M. to 11 P.M. on December 18, 2023.[5] Before leaving for work, she testified to leaving the victim in the Defendant's custody. *Trial Tr.,* 02/10/2025, p. 67. Both Devonte Riedel and Misty Unangst, the Defendant's housemates, testified that it was a typical occurrence for the Defendant to be the only person to be in custody and control of Glafelter's children when Gladfelter was at work. *Trial Tr.,* 02/11/2025, p. 55;

---

[5] The Commonwealth submitted Gladfelter's timesheet from her employer to show she was at work from 2 P.M. to 11.P.M. on December 18, 2023. *See Commonwealth's Ex.2.*

19

*Trial Tr.*, 02/11/2025, p. 206. That evening the Defendant sent multiple texts and pictures to Gladfelter that showed the victim with the Defendant. *Trial Tr.*, 02/10/2025, pp. 83-84. Devonte Riedel testified to last seeing the victim descend into the basement with the Defendant around 10:30 P.M. on December 18, 2023. *Trial Tr.*, 02/11/2025, p.60.

The Commonwealth also submitted evidence that the Defendant murdered the victim and attempted to hide the crime. When Gladfelter came home from work around 11:30 P.M. on December 18, 2023, the Defendant texted her that he sent the victim to his cousin's house but never identified the cousin or provided further information about the child's specific whereabouts. *Trial Tr.*, 02/10/2025, pp. 88-92. Gladfelter testified that when she entered the basement, she observed the Defendant doing laundry, an activity she had not observed him perform prior to that night. *Trial Tr.*, 02/10/2025, p. 93. The following day, both Misty Unangst and Devonte Riedel testified that the Defendant told them he had given the victim to a cousin in Erie. *Trial Tr.*, 02/10/2025, p. 212; *Trial Tr.*, 02/11/2025, p. 61.

On December 20, 2025, Oil City police officers found the victim's naked corpse in a large air mattress in the basement area near the Defendant's bed. *Trial Tr.*, 02/10/2025, p. 161. Dr. Vey testified that the victim died from injuries sustained from repeated blunt force trauma to the head, chest, abdomen, and extremities delivered with a large amount of force. *Trial Tr.*, 02/11/2025, pp. 4-50; *Commonwealth Ex. 29*, 2/11/2025. The autopsy report indicated that the victim had 98 bruises and lacerations all over his body. Dr. Vey found the victim's heart lacerated, lungs ruptured, broken ribs, spleen lacerated, pancreas torn in two, kidney torn, and the small intestine bruised among many other injuries. *Id.* Dr.Vey also observed thermal abrasions on the victim's buttocks indicative of a cigarette burn. *Id.* Dr. Vey testified that the injuries sustained by the child-victim were consistent in severity with the types of injuries

20

suffered in a fatal car crash. *Trial Tr.*, 2/11/2025, p.43. Dr.Vey's testified that the victim's injuries were consistent with deliberate and repeated strikes. *Trial Tr.*, 2/11/2025, pp. 43-47.

When questioned by law enforcement, the Defendant offered inconsistent answers and non-sensical responses. *Commonwealth's Ex. 36.* The Defendant told law enforcement that he did not take care of the children, never sent the victim to Erie, and was not at the house when Gladfelter got home on December 18, 2023. *Id.* Upon an accusation that he killed the child by law enforcement, the Defendant was silent for approximately thirty (30) seconds before denying his involvement.[6] *See Commonwealth's Ex. 36.,* 00:38:27.

Viewing the evidence in the light most favorable to the Commonwealth, a jury could reasonably infer, the victim was in the Defendant's care during the relevant time period, the injuries were non-accidental, the Defendant murdered the victim, and then lied about it in statements made to law enforcement and to the other witnesses. This evidence, even though circumstantial, is enough for the Commonwealth to carry its burden in identifying the Defendant as the perpetrator of this crime. Therefore, the Defendant's claim is meritless.

In addressing the weight of the evidence claim, the weight of the evidence is exclusively for the finder of fact to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Orr*, 38 A.3d 868, 873 (Pa. Super. 2011). A jury verdict may only be reversed when it is so contrary to the evidence as to shock one's sense of justice. *Id.*

---

[6] A defendant's silence after an accusation of guilt is generally not admissible where the silence occurred while the defendant is in police custody because a contrary policy would effectively vitiate a defendant constitutionally guaranteed right against self-incrimination. *Commonwealth v. Dravecz*, 227 A.2d 904 (Pa. 1967). However, this principal does not extend to tacit admissions where the defendant does not remain silent but instead volunteers a response to police questioning. Commonwealth v. Hawkins, 549 Pa. 352, 386 (Pa. 1997). Here, the Defendant was readily conversing with police. the Defendant was silent for approximately thirty (30) seconds before denying his guilty. *See Commonwealth's Ex. 36.,* 00:38:27.

Here, the jury verdict is not so against the weight of the evidence that it "shocks one's sense of justice." As stated previously, the victim was found deceased from repeated blunt force trauma to the head, neck, face, abdomen, and extremities. In Dr.Vey's expert opinion, the victim's injuries were consistent with deliberate and repeated strikes. The Defendant was given custody of the child on the night of the murder. Multiple witnesses saw the two together on the night of the murder. On the evening of December 18, 2025, the Defendant lied about the whereabouts of the victim stating he was with his cousin. The victim was found in a large air mattress bag in the same area as the Defendant's bed. Defendant's statements to law enforcement were contradicted by his own text message statements and picture messages sent to Caleigh Gladfelter.[7]

The Defendant asserts that the jury's verdict cannot be supported considering, *inter alia*, Devonte Riedel's testimony where he indicated he was unsure about the exact date, he observed the Defendant and the victim descend the stairs into the basement. This misstates Riedel's testimony. Riedel testified to not seeing the victim child the day after the murder, which was corroborated by the testimony of Misty Unanst and Caleigh Gladfelter. Riedel was unsure about whether the night of the murder, December 18, 2025, was a Sunday or a Monday, not about the date he observed the Defendant descend into the basement with the victim:

| ATTORNEY MISKO: | You indicated that you saw Mr.Jackson going downstairs Monday, the 18th, with the two boys and that was the last time you had eyes on them watching them go down the stairs, so to speak? |
|---|---|
| RIEDEL: | Yes, sir. |
| ATTORNEY MISKO: | Was that Sunday or Monday? |
| RIEDEL: | It was Monday. |

[7] Defendant stipulated to the authenticity and accuracy of the messages prior to trial. The Defendant cannot now argue he did not send the messages or that the message were not true.

| | |
|---|---|
| ATTORNEY MISKO: | You are sure of that today? |
| RIEDEL: | I'm positive. |
| ATTORNEY MISKO: | Is it your own recollection or maybe because had you talked to Misty about what was going on and maybe you said, yeah, it was Monday? |
| RIEDEL: | It was after I talked to Misty about it when we got home that night from being at the police station. |
| ATTORNEY MISKO: | So, it really not from your memory. It's kind of like Misty's memory as well. Right? |
| RIEDEL: | Yeah. |
| ATTORNEY MISKO: | Because actually when you got interviewed you weren't quite sure if it was Monday or Sunday was the last time, you'd seen Mr. Jackson with the boys. Isn't that correct? |
| RIEDEL: | Yes. |

*Trial Tr., 02/11/2025*, pp. 63-64. Regardless of Riedel's memory of the events surrounding the victim's murder, the jury was able to believe or disbelieve his testimony in light of all the other evidence presented.

This claim also fails to consider the testimony of Misty Unangst, Caliegh Gladfelter, or the Defendant's own statements, texts, and picture messages. The jury was free to reconcile Riedel's testimony with the other testimony provided at trial to reach a verdict.

The same is true in regards to the blonde hair found on a wooden object next to the location of the victim's body. The victim's body was found in an air mattress bag that had been used for laundry in the basement. Both the Defendant and Gladfelter lived, slept, and did laundry in the basement. Gladfelter, the victim, and his brother all lived in the basement and had light colored hair. Both children had longer hair when they began residing in Oil City and the Defendant had cut their hair at an undetermined point after November 23, 2023. *Trial Tr, 2/10/25*, p. 65. The presence of a light blonde hair is of little import considering the amount of people who were present in that area at any given time. Furthermore, Commonwealth Exhibit 23 illustrates a

23

blonde hair on the floor in front of laundry where the victim's hair was cut. No other evidence was presented alleging that any other person committed the crime. The jury is free to weigh this evidence in light of the other evidence presented. Just because evidence may lend itself to an alternative resolution, it does not mean that it is so contradictory to warrant a reversal of the verdict. Therefore, the weight of the evidence does not contradict the verdict and the Defendant's claim is meritless.

3. **Sufficiency of the Evidence for Count 2 - Aggravated Assault**

The Defendant asserts that the evidence presented in this case is not sufficient to convict the Defendant of aggravated assault in violation of 18 Pa. C.S.A. § 2702(a)(9). The Defendant claims that no direct evidence was presented at the time of trial that identified the Defendant as the perpetrator of the crime. *See* Defendant's Concise Statement, 5/12/2025, ¶ 7. To support his claim, the Defendant asserts that Devonte Riedel's testimony witnessing the Defendant and victim descend together into the basement on the night of the murder is unreliable because on cross examination he was unsure of what date he observed the two together. *Id.* Furthermore, the Defendant presented evidence at trial that a blonde hair, not the Defendant's black hair, was found on a wooden object next to where the decedent's body was located. *Id.*

As previously stated, the court struggles to parse out the nature of this claim because it oscillates between a challenge to the sufficiency of the evidence and a challenge to the weight of the evidence. The Court maintains that when a claim is subject to multiple interpretations it is ambiguous and is waived for lack of specificity under Pa.R.A.P. 1925(B)(4). Further, each of the Defendant's issues raised on appeal impermissibly contains sub-issues. Pa.R.A.P. 1925(b)(ii) requires a concise statement to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."

24

A 1925(b) statement which is so "redundant, vague, incoherent, or confusing as to prevent the lower court from engaging in a meaningful analysis result in waiver of all claim presented." *Commonwealth v. Ray*, 134 A.3d 1109 (Pa. Super.2016). Nevertheless, Court will analyze the Defendant's claim under both a sufficiency of the evidence and a weight of the evidence. analysis in the event the appellate court finds the claim is not waived.

In analyzing the sufficiency of the evidence claim for aggravated assault under 18 Pa. C.S.A. § 2702 (a)(9), the Commonwealth must prove: (1) a person attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury, (2) the victim is a child less than thirteen (13) years old, and (3) the defendant is over eighteen (18) years old. 18 Pa.C.S. § 2702(a)(9). In assessing the evidence presented, circumstantial evidence can itself be sufficient to prove any or every element of the crime. *Commonwealth. v. Perez*, 93 A.3d 829 (Pa. 2014). Further, the jury may infer the custodial adult caused the injuries when the adult was given sole custody of a child and during that time the child sustained non-accidental injuries. *See Commonwealth v. Meredith*, 416 A.2d 481 (Pa. 1980).

Here, the Defendant does not state a specific element of aggravated assault but rather challenges the identity of the Defendant as perpetrator of this crime. In consideration of the facts presented in the sufficiency analysis for First Degree Murder, the analysis of that evidence, and all inferences that flow therefrom, the Court finds the evidence was sufficient to conclude the Defendant was the perpetrator of the aggravated assault. Further, the evidence, viewed in the light most favorable to the Commonwealth, established the victim suffered significant blunt force trauma resulting in serious bodily injury; the injuries were consistent with deliberate and repeated strikes to his head, neck, face, abdomen, and extremities; and the Commonwealth presented evidence that the Defendant was twenty-four years old and the victim was two (2)

25

years old at the time of the murder. A jury may reasonably infer from these facts that the injuries were caused intentionally, knowingly, or recklessly by the Defendant. Therefore, viewing the evidence in a light most favorable to the Commonwealth, the evidence is sufficient to sustain the Defendant's conviction of aggravated assault in violation of 18 Pa. C.S.A.§ 2702(a)(9) and the Defendant's claim is meritless.

In analyzing the Defendant's claim under the weight of the evidence analysis, the Court incorporates the previous weight of the evidence analysis for First degree Murder and finds the jury verdict was not so against the weight of the evidence that it "shocks one's sense of justice." The Defendant's evidence questioning the credibility of Devonte Riedel's testimony and pointing to a blonde hair near the victim's body must be weighed against the evidence presented by the Commonwealth. The Commonwealth presented eyewitness testimony that the victim was seen alive in the morning, testimony from Gladfelter, Riedel, and Unangst stating that the Defendant was left in the care of the Defendant when Gladfelter was at work, Gladfelter's time card proving she was at work on December 18, 2023, texts and pictures from the Defendant showing the victim was in his presence on the evening of December 18, 2023, and the Defendant's inconsistent statements about giving the victim to a cousin. The jury is free to believe all, some of, or none of the testimony. This court cannot find that the jury verdict is against the weight of the evidence. Therefore, the Defendant's claim is meritless.

4. **Sufficiency of the Evidence for Count 3 - Concealment of the Whereabouts of a Child**

The Defendant alleges that the evidence presented by the Commonwealth was not sufficient to convict the Defendant of Concealment of the whereabouts of a child in violation of 18 Pa. C.S.A. § 2909. *See Concise Statement*, 05/12/2025, ¶ 8. Again, the court struggles to parse out the nature of this claim because the Defendant states that the evidence is not sufficient

26

which implicates a sufficiency claim but also states contradictory evidence which implicates a weight of the evidence claim. The court maintains that when a claim is subject to two or more reasonable interpretations it is ambiguous and is waived for lack of specificity under Pa.R.A.P. 1925(B)(4). Nevertheless, Court will analyze the Defendant's claim under both a sufficiency of the evidence and a weight of the evidence analysis in the event the appellate court finds the claim is not waived.

In addressing the sufficiency of the evidence claim, the court finds this claim to be waived. A challenge to the sufficiency of the evidence needs "to specify the element or elements upon which the evidence is insufficient." *Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa. Super. 2015); *Commonwealth v. Williams*, 959 A.2d 1252, 1257-1258 (Pa. Super. 2008). When a 1925(b) statement does not specify the allegedly unproven elements the sufficiency issue is waived on appeal. *Tyack* at 260. Here, the Defendant's claim includes a general statement that the evidence was "not sufficient." *See Concise Statement*, 05/12/2025, ¶ 8. Unlike the defendant's other claims, this claim does not state that the evidence was insufficient to identify the Defendant as the perpetrator, nor does it specify any element for which there is insufficient evidence. Alone, this statement that the evidence was "not sufficient" fails to specify the element or elements upon which the evidence is insufficient." *Id.* Accordingly, this claim is waived for failure to specify an element.

In the event the court finds that the claim is not waived, the evidence was sufficient to support the jury verdict. In order to be convicted of Concealment of the Whereabouts of a Child, the Commonwealth must show: (1) the Defendant removed a child from his known place of residence, (2) the child is under eighteen (18) years of age, and (3) the Defendant removed the

27

child with the intent to conceal his whereabouts. A defendant can remove a child by personally removing the child or by preventing the child from returning.

Here, the Commonwealth presented evidence that the Defendant encouraged Gladfelter to remove the victim and prevented his return. Gladfelter testified that the victim had been staying with his biological father in Fulton County. *Trial Tr.*, 02/10/2025, p. 54. The victim was two (2) years old at the time of being removed from his father's custody. Gladfelter and the biological father had been sharing custody of the victim and arranged for him to celebrate Thanksgiving with Gladfelter and the Defendant at Gladfelter's parent's house. *Id.* Gladfelter testified that the Defendant had convinced her to take the victim back to Venango County with him for an indefinite period of time. *Id.* at 55. Gladfelter received texts from the biological father and the paternal side of the family but she never responded because "Tre [the Defendant] didn't want me to." *Id.* at. 106-107. Gladfelter also testified that the Defendant engaged in manipulative behavior like beating her and keeping her car keys which prevented her from reporting. *Id.* at pp. 51.-52; 68-69; 77-78. Therefore, the Commonwealth presented sufficient evidence that the defendant concealed the whereabouts of the victim from his biological father and the defendant's claim is without merit.

In analyzing the weight of the evidence claim, the court finds it is also waived. The Defendant again points to the credibility of Devonte Riedel's testimony and the blonde hair present at the crime scene. However, neither of these assertions pertain to the concealment of the whereabouts of the victim from the biological father. As stated above, the central question for this crime is whether the child was removed from his place of residence and whether the Defendant prevented his return. Riedel's testimony pertains to the victim being in the Defendant's presence on December 18, 2023 and the blonde hair pertains to the identity of the

28

victim's murder. The Defendant's contradictory evidence claim does not attack any element of the crime. Therefore, the Defendant's claim is without merit.

## 5. Sufficiency of the Evidence for Count 5 – Abuse of Corpse

The Defendant alleges that the evidence presented by the Commonwealth was not sufficient to convict the Defendant of Abuse of Corpse in violation of 18 Pa. C.S.A. § 5510. *See Concise Statement*, 05/12/2025, ¶ 9. The Defendant asserts that the Commonwealth presented no direct evidence, eyewitness testimony, video evidence or admission that identifies the Defendant as perpetrator of the crime. *Id.* To support his claim, the Defendant asserts that Devonte Riedel's testimony witnessing the Defendant and victim descend together into the basement on the night of the murder is unreliable because on cross examination he was unsure of what date he observed the two together. *Id.* Furthermore, the Defendant asserts that a blonde hair was found near the crime scene was found on a wooden object next to where the decedent's body was located, not the Defendant's black hair. *Id.*

Again, the court struggles to parse out the nature of this claim because the Defendant states that the evidence is "not sufficient" and asserts the Commonwealth does not identify the Defendant which both implicate a sufficiency claim but also states contradictory evidence which implicates a weight of the evidence claim. The court maintains that when a claim is subject to two or more reasonable interpretations it is ambiguous and is waived for lack of specificity under Pa.R.A.P. 1925(B)(4). Nevertheless, Court will analyze the Defendant's claim under both a sufficiency of the evidence and a weight of the evidence analysis in the event the appellate court finds the claim is not waived.

In analyzing the sufficiency claim, the court finds the Defendant's claim to be meritless. In order to be convicted of Abuse of a Corpse in violation of 18 Pa C.S.A. § 5510, the

29

Commonwealth must show that the Defendant treated the corpse of the victim in a way that he knew would outrage ordinary family sensibilities. Here, the victim's corpse was found in a large bag located under a table in the basement near to where the Defendant slept. *Trial Tr.*, 02/10/2025, p. 159. The bag was placed among numerous stacked items like decorations in the basement. *Id.* While there is no direct evidence identifying the Defendant as perpetrator of this crime, the Commonwealth does not need to present direct evidence to carry its burden. The Commonwealth can carry its burden exclusively through circumstantial evidence. *Commonwealth v. Perez*, 93 A.3d 829 (Pa. 2014).

Here, the Defendant does not state a specific element of abuse of a corpse but rather challenges the identity of the Defendant as perpetrator of this crime. In consideration of the facts presented in the sufficiency analysis for First Degree Murder, the evidence was sufficient to conclude the Defendant was the perpetrator of the abuse of a corpse. Viewing the evidence in the light most favorable to the Commonwealth, the jury can infer the Defendant was the perpetrator of this crime of first-degree murder, hid the victim's body, made inconsistent statements about caring for the child, made inconsistent statements about caring for the child on the day of the homicide, made contradictory statements of the child's whereabouts, and concealed the evidence of the crime by washing the victim's clothes. Therefore, taking the Commonwealth's evidence as true, the evidence is sufficient to sustain the Defendant's conviction of abuse of a corpse in violation of 18 Pa. C.S.A.§ 5510 and the Defendant's claim is meritless.

In analyzing the weight of the evidence, the weight of the evidence is exclusively for the finder of fact to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Orr*, 38 A.3d 868, 873 (Pa. Super. 2011). A jury verdict may only

be reversed when it is so contrary to the evidence as to shock one's sense of justice. *Id.* Here, the jury verdict is not so against the weight of the evidence that it "shocks one's sense of justice." As stated previously, the victim was found in a large bag in the basement near where the Defendant slept, the Defendant was given custody of the child on the night of the murder, multiple witnesses saw the two together on the night of the murder, the Defendant lied about the whereabouts of the child to Gladfelter, and made inconsistent statements to law enforcement.

The Defendant asserts that the jury's verdict cannot be supported considering Riedel's testimony where he admitted to being unsure about the exact date, he observed the Defendant and the victim descend the stairs into the basement. *Trial Tr.* 2/11/2025, pp. 63-64. This misstates Riedel's testimony. Riedel was unsure about whether the night of the murder, December 18, 2025, was a Sunday or a Monday, not about the date he observed the Defendant descend into the basement with the victim. Regardless of Riedel's memory of the events surrounding the victim's murder, the jury was able to believe or disbelieve his testimony in light of all the other evidence presented.

The same is true in regards to blonde hair found on a wooden object next to the location of the victim's body. The victim's body was found in a large laundry bag in the basement. Both the Defendant and Gladfelter lived, slept, and did laundry in the basement. Gladfelter, the victim, and his three (3) year old brother all lived in the basement and had light colored hair. The presence of a light blonde hair is of little import considering the amount of people who were present in that area on a daily basis. No other evidence was presented alleging that any other person committed the crime. The jury is free to weigh this evidence in light of the other evidence presented and just because evidence may lend itself to an alternative resolution, it does

31

not mean that it is so contradictory to warrant a reversal of the verdict. Therefore, the weight of the evidence does not contradict the verdict and the Defendant's claim is meritless.

6. **Sufficiency of the Evidence for Count 6 – Tampering with or Fabricating Physical Evidence**

The Defendant alleges that the evidence presented by the Commonwealth was not sufficient to convict the Defendant of Tampering with or Fabricating Physical Evidence in violation of 18 Pa. C.S.A. § 4910(1). *See Concise Statement*, 05/12/2025, ¶ 9. The Defendant asserts that no direct evidence was presented by the Commonwealth identifying the Defendant as perpetrator of the crime. To support his claim, the Defendant asserts that Devonte Riedel's testimony is unreliable because on cross examination he was unsure of the date he observed the two together. *Id.* Furthermore, the Defendant asserts that a blonde hair was found next to where the decedent's body on a wooden object, not the Defendant's black hair. *Id.*

The court struggles to parse out the nature of this claim because the Defendant states that the evidence is not sufficient which implicates a sufficiency claim but also states contradictory evidence which implicates a weight of the evidence claim. The court maintains that when a claim is subject to two or more reasonable interpretations it is ambiguous and is waived for lack of specificity under Pa.R.A.P. 1925(B)(4). Nevertheless, Court will analyze the Defendant's claim under both a sufficiency of the evidence and a weight of the evidence analysis in the event the appellate court finds the claim is not waived.

In addressing the sufficiency of the evidence claim, the Commonwealth must show: (1) the Defendant believed an official investigation was pending or about to be instituted, (2) the Defendant altered or concealed evidence, (3) the Defendant did so with the intent to impair its availability to the investigation. 18 Pa. C.S.A. § 4910(1). In proving this crime, the

32

Commonwealth need not present direct evidence. The Commonwealth can carry its burden exclusively through the use circumstantial evidence. *Commonwealth. v. Perez*, 93 A.3d 829 (Pa. 2014).

Here, the Defendant does not cite a specific element of tampering or fabricating physical evidence but rather challenge the identity of the Defendant as the perpetrator of this crime. In consideration of the facts as presented in the sufficiency analysis for First Degree Murder, the jury could reasonably infer the Defendant hid the victim's body and laundered the victim's clothes after brutally beating the minor to death. Therefore, the Defendant's claim is meritless.

In analyzing the weight of the evidence, the finder of fact to is free believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Orr*, 38 A.3d 868, 873 (Pa. Super. 2011). A jury verdict may only be reversed when it is so contrary to the evidence as to shock one's sense of justice. *Id.* Here, the jury verdict is not so against the weight of the evidence that it "shocks one's sense of justice." As stated previously, the victim was found in a large bag in the basement next to where the Defendant slept, the victim was observed under the care, custody, and control of the Defendant on the night of his disappearance, and the Defendant lied about the whereabouts of the child.

The Defendant asserts that the jury's verdict cannot be supported considering Riedel's testimony where he admitted to being unsure about the exact date, he observed the Defendant and the victim descend the stairs into the basement. *Trial Tr.* 2/11/2025, pp. 63-64. This misstates Riedel's testimony. Riedel was unsure about whether the night of the murder, December 18, 2025, was a Sunday or a Monday, not about the date he observed the Defendant descend into the basement with the victim. Regardless of Riedel's memory of the events

33

surrounding the victim's murder, the jury was able to believe or disbelieve his testimony in light of all the other evidence presented.

The same is true in regards to blonde hair found on a wooden object next to the location of the victim's body. The victim's body was found in a large bag in the basement. Both the Defendant and Gladfelter lived, slept, and did laundry in the basement. Gladfelter, the victim, and his three (3) year old brother all lived in the basement and had light colored hair. The presence of a light blonde hair is of little import considering the amount of people who were present in that area on a daily basis. No other evidence was presented alleging that any other person committed the crime. The jury is free to weigh this evidence in light of the other evidence presented. Just because evidence may lend itself to an alternative resolution, it does not mean that it is so contradictory to warrant a reversal of the verdict. Therefore, the weight of the evidence does not contradict the verdict and the Defendant's claim is meritless.

## III. CONCLUSION

For the foregoing reasons, this Court respectfully requests that the Superior Court uphold the Defendant's convictions and affirm the March 31, 2025 judgement of sentence.

BY THE COURT,

MATTHEW T. KIRTLAND, President Judge

Cc: DA
PD
Tina Fryling, Esq.
LE

34

# IN THE SUPERIOR COURT OF PENNSYLVANIA
## SITTING AT PITTSBURGH

COMMONWEALTH OF PENNSYLVANIA :
                               :
               v.                :         487 WDA 2025
                                 :
TREVAUGHN STRIBLING-JACKSON     :

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is this date serving the foregoing document upon the persons and in the manner indicated below, which service satisfies the requirements of the Pennsylvania Rules of Appellate Procedure:

D. Shawn White
Venango County District Attorney
Venango County Courthouse
Franklin, PA 16323

Personal service upon duly authorized agent at office.

TREVAUGHN STRIBLING-JACKSON
PA DOC, SMART COMMUNICATIONS

First class mail, postage prepaid

Date: October 2, 2025

Respectfully submitted,

Tina M. Fryling, I.D. No. 76520
Attorney for Appellant